795 F.2d 1385
 21 Fed. R. Evid. Serv. 130
 David HANNAH, Appellant,
v.
CITY OF OVERLAND, MISSOURI; Overland Police Department;
St. Louis County, Missouri; Ralph Crump; Raymond
Poeschel; Russell Coffell; Robert
Morrissey and Michael O'Brien,
Appellees.
 No. 84-2401.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 10, 1986.
Decided July 8, 1986.
Rehearing Denied July 31, 1986.
 
 Edwin O. Switzer, St. Louis, Mo., for appellant.
 Robert Herman and J. Michael Waller, St. Louis, Mo., for appellees.
 Before McMILLIAN and BOWMAN, Circuit Judges, and HANSON,* Senior District Judge.
 BOWMAN, Circuit Judge.
 
 
 1
 Plaintiff David Hannah appeals from the judgment entered by the District Court[1] in favor of all defendants. Hannah filed suit under 42 U.S.C. Sec. 1983, alleging, inter alia, that he was arrested and detained without probable cause on a capital murder charge; that the arresting officers used unreasonable and excessive force in arresting him; that at the police station after the arrest he was forced to remove all of his clothes except his underwear and to remain unclothed for several hours; that he was threatened and assaulted by the police officers during interrogation; that the police officers suppressed evidence that exonerated him; and that jail officials were deliberately indifferent to his medical and dental needs during his pre-trial detention at the St. Louis County jail. At the close of all the evidence at trial, the District Court directed verdicts for and dismissed without explanation defendants City of Overland, Overland Police Department, Chief of Police Raymond Poeschel, Detective Robert Morrissey and Detective Michael O'Brien. The jury returned verdicts in favor of the three remaining defendants, Detective Ralph Crump, Officer Russell Coffell and St. Louis County.
 
 I.
 
 2
 Robert "Red" Musgrove was murdered on June 18, 1981 between 12:30 a.m. and 3:30 a.m. on the front parking lot of his residence and business on Woodson Road in Overland, Missouri. Musgrove had been shot four times in the chest with a .38 caliber weapon, possibly fired from a nearby alley. The St. Louis Major Case Squad and the Overland Police Department investigated the murder. Detective Ralph Crump of the Overland Police Department was in charge of the Overland investigation. Detectives Robert Morrissey and Michael O'Brien and Officer Russell Coffell assisted in the investigation.
 
 
 3
 The investigation uncovered evidence that a life insurance policy on the victim's life had been purchased just prior to the murder, and that the named beneficiary under the policy was the victim's estranged wife, Sharon Musgrove. Mrs. Musgrove's boyfriend at the time of the murder was Charles Bullock, who was an acquaintance of David Hannah.
 
 
 4
 David Hannah, upon request by the Overland police, voluntarily spoke with the investigating officers as many as seven or eight times prior to his arrest on July 2, 1981. Detective Crump testified that Hannah gave them a written statement in their first interview with him on June 19 stating that he and Bullock were drinking together on the night of the murder, and that they later ate at a Taco Bell restaurant on Woodson Road. Hannah stated that they arrived at Taco Bell at approximately 12:30 a.m. The Taco Bell restaurant is located within a block of the murder scene. Other witnesses interviewed by the Overland police confirmed that Hannah and a car matching the description of a car driven by Hannah at the time of his arrest on July 2 were seen at the Taco Bell restaurant at the approximate time of the murder.
 
 
 5
 In the early morning hours on July 2, 1981, defendants Crump and Coffell interviewed a Danny Beede. Beede had been taken into custody by the Overland police because of an outstanding arrest warrant. Beede, who initiated the conversation, told Crump and Coffell that on June 27, 1981, he had been drinking at a local bar with a man whom he knew as "Dave." His description of Dave--a thirty-year-old white male, 5'9", medium build--generally matched David Hannah's features. According to Beede, Dave had told him that he had shot a man four times in the chest with a .38 from an alley, and had silenced the shots by placing a baby bottle nipple over the revolver. Dave also stated that the victim's wife would receive a large sum of money and that he would receive a new motorcycle as payment for his role in the murder. Many of the details provided by Beede lent credibility to his statement because they matched details of Musgrove's murder that had not been released to the press or to the general public. Based in large part on Beede's statement and the other information noted above which was then available to the Overland Police Department, Hannah was arrested without a warrant at the direction of defendant Crump at 2:30 a.m. on July 2, 1981 (immediately after Beede gave his statement).
 
 
 6
 Hannah was taken to the Overland police station and was charged with capital murder. After being advised of and waiving his Miranda rights, Hannah gave a written statement to the police.[2] In that statement Hannah admitted that in late May 1981 Charles Bullock had offered him $1000, a motorcycle, and a trip to Jamaica if he would kill Robert Musgrove. Bullock also said, according to Hannah, that if Musgrove were killed he and Sharon Musgrove "would be rich." Hannah stated that he refused the offer, after which Bullock responded that it was only a joke and that he was just testing Hannah. After the murder, according to Hannah, Bullock and Sharon Musgrove talked about their "newly acquired wealth."
 
 
 7
 Hannah also was given a polygraph examination on July 2. When asked whether he shot Musgrove and whether he was present when Musgrove was shot, Hannah answered "no." In the opinion of the polygraph examiner, Hannah was "deceptive and not truthful in his answers." Hannah was released later that day by the Overland police.
 
 
 8
 On the basis of this and other corroborating information, the Overland police obtained an arrest warrant on Hannah for capital murder, and Hannah was arrested a second time on July 27, 1981. A St. Louis County grand jury returned an indictment for capital murder against Hannah on August 3, 1981.
 
 
 9
 Hannah was detained in the St. Louis County jail for approximately eleven months until the criminal charge was dropped on June 25, 1982. According to Joseph Larrew of the St. Louis County prosecutor's office, the capital murder charge was dropped when Danny Beede, the prosecution's key witness, refused to testify or cooperate with the prosecutor unless he was given some kind of "deal" regarding a prison sentence he then was serving in Ohio on an unrelated conviction. Because the St. Louis County prosecutor's office had no authority or jurisdiction to agree to such a bargain in exchange for Beede's testimony, which was of critical importance to the State's case, the charges were dropped. Hannah then filed this civil rights action for alleged violations of his constitutional rights arising out of his arrests and his detention in the St. Louis County jail.
 
 II.
 
 10
 On appeal Hannah alleges five grounds of reversible error by the District Court. Hannah contends that the court erred in: (1) refusing to allow him to testify as to his "alibi"--i.e., his innocence and his whereabouts at the time of the murder; (2) refusing to admit into evidence the deposition testimony of two persons regarding perceived threats made to them by Overland police officers; (3) admitting evidence of his prior criminal convictions during cross-examination to impeach his credibility; (4) directing verdicts in favor of five of the defendants; and (5) denying leave to amend the complaint. For the reasons discussed below, we affirm.
 
 A.
 
 11
 Hannah first contends that the District Court erred in refusing to allow him to testify as to his "alibi"--i.e., his innocence generally and his whereabouts on the night of the murder specifically. Hannah argues that such testimony is relevant to the issue of whether defendants acted in good faith and had probable cause to arrest him on July 2, 1981 and again on July 27, 1981.
 
 
 12
 An appellant bears a heavy burden under the appellate standard of review of a district court's evidentiary rulings. Whether to admit or exclude testimony is committed to the sound discretion of the district court. This Court will reverse a district court's decision to exclude evidence only if the district court has abused its discretion. United States v. Curnew, 788 F.2d 1335, 1338 (8th Cir.1986); Smith v. Firestone Tire & Rubber Co., 755 F.2d 129, 133 (8th Cir.1985) ("Questions of relevancy are committed to the broad discretion of the trial court....").
 
 
 13
 It is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments. Sartin v. Commissioner of Public Safety, 535 F.2d 430, 434 (8th Cir.1976). But a police officer "who arrests someone with probable cause is not liable for false arrest simply because the innocence of the suspect is later proved." Pierson v. Ray, 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967); see Baker v. McCollan, 443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979) (suspect's innocence of the criminal charge is irrelevant to his claim since the Constitution does not guarantee that only the guilty will be arrested).
 
 
 14
 This Court often has addressed the issue of probable cause. We previously have stated that
 
 
 15
 [i]n determining whether probable cause exists to make a warrantless arrest, a court will consider whether the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed ... an offense. Probable cause is to be assessed in terms of the circumstances confronting a reasonably cautious police officer at the time of the arrest, and the arresting officer is entitled to consider the circumstances, including arguably innocent conduct, in light of his training and experience. "[T]he probability, and not a prima facie showing, of criminal activity is the standard of probable cause."
 
 
 16
 United States v. Wallraff, 705 F.2d 980, 990 (8th Cir.1983) (quoting Spinelli v. United States, 393 U.S. 410, 419, 89 S.Ct. 584, 590-91, 21 L.Ed.2d 637 (1969)) (other citations omitted); cf. Malley v. Briggs, --- U.S. ----, 106 S.Ct. 1092, 1096-98, 89 L.Ed.2d 271 (1986) (standard of objective reasonableness applied in warrant context); Illinois v. Gates, 462 U.S. 213, 230-46, 103 S.Ct. 2317, 2328-36, 76 L.Ed.2d 527 (1983) ("totality of the circumstances" approach adopted in cases involving informants' tips); Deary v. Three Un-Named Police Officers, 746 F.2d 185, 191-92 (3d Cir.1984).
 
 
 17
 Though the record does not reflect exactly what evidence Hannah would have introduced regarding his alleged alibi,[3] we fail to see how the District Court's exclusion of any testimony by Hannah as to his innocence was either prejudicial error or an abuse of discretion. Hannah's statements to the police did not provide them with any information or alibi that necessarily should have been investigated before the decision to arrest him was made. Indeed, his statements were consistent with the statement given by Beede, which directly implicated Hannah in the Musgrove murder. The information provided by Beede included details regarding the murder that were not disclosed to the general public or to the press.[4] His knowledge of those details, purportedly acquired in conversations with Hannah, lent substantial credence to his statement, and together with the information supplied by Hannah himself, clearly established probable cause to arrest Hannah. In the circumstances of this case, the alibi evidence proffered by Hannah was not relevant to the issue of probable cause. Therefore, we conclude that the District Court did not abuse its discretion in excluding that evidence.
 
 B.
 
 18
 Hannah next contends that the District Court erred in excluding the introduction into evidence of the deposition testimony of two persons not parties to the action. Hannah sought to introduce the deposition testimony of Stanley Faughn and Robert Mesko, both of whom were deposed on May 21, 1982 by Hannah in connection with the capital murder prosecution. Joseph Garavaglia, a St. Louis County assistant prosecutor representing the State of Missouri, was present at the taking of those depositions.
 
 
 19
 Faughn and Mesko were interviewed by the Overland police during the Musgrove investigation. Though no specific date is indicated in the record, the interviews apparently were conducted prior to Hannah's arrest on July 2, 1981. Both Faughn and Mesko stated in their depositions that they felt they were "pressured" and "threatened" by Overland police officers to cooperate in the Musgrove investigation and to implicate Hannah in the murder. Hannah sought to admit the depositions into evidence to establish defendants' bad faith in arresting and detaining him. Hannah's counsel stated at trial that the depositions "will show that the police did their damndest to put David Hannah in jail in spite of the fact that [Faughn and Mesko] said that he wasn't guilty...." Trial Transcript at 265-66. Hannah argues that the jury reasonably could infer that police officers who were willing to threaten third parties to gain evidence against Hannah acted in bad faith. We disagree.
 
 
 20
 We fail to discern the logical connection of this evidence to the issue of probable cause. We held above that defendants clearly had probable cause to arrest Hannah on July 2. If there was probable cause to arrest Hannah, based on an objective reasonableness standard, the subjective motivations of the arresting police officers are irrelevant. See United States v. Pollack, 739 F.2d 187, 191 (5th Cir.1984); United States v. Ayres, 725 F.2d 806, 809 (1st Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 84, 83 L.Ed.2d 31 (1984).
 
 
 21
 There is, moreover, further reason to affirm the District Court's exclusion of the deposition testimony of Faughn and Mesko. Under Fed.R.Evid. 804(b)(1), former deposition testimony taken in another proceeding is not excluded by the hearsay rule if, in a civil action, a "predecessor in interest had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." (emphasis added)
 
 
 22
 As noted above, an attorney from the St. Louis County prosecutor's office represented the State of Missouri at the depositions. There were no representatives on behalf of any of the defendants herein present. Assuming arguendo that the State was a "predecessor in interest" of the defendants in the present action--a proposition that is by no means clear--the prosecutor did have an "opportunity" to develop the testimony of Faughn and Mesko. However, we do not believe that he had a "similar motive" to develop their testimony.
 
 
 23
 When the depositions were taken on May 21, 1982, Hannah already had been indicted by a grand jury for capital murder, and was awaiting trial in the criminal prosecution. The State's case rested in large part on the testimony of Danny Beede, as well as on the corroborating statements of other witnesses, including Hannah. The fact that two friends of David Hannah testified they were "threatened" and "pressured" by the police to implicate Hannah in the murder was of little, if any, concern to the State at that time. The State apparently thought it had sufficient credible evidence to prove Hannah's guilt beyond a reasonable doubt. The testimony of Faughn and Mesko posed little danger, if any, to the State's case against Hannah. We do not believe that the State had any significant motive, much less a "similar" motive, to develop the testimony of Faughn and Mesko regarding threats by the police. It follows that the deposition testimony of Faughn and Mesko would not have been admissible under Rule 804(b)(1). Accordingly, we hold that the District Court did not abuse its discretion in excluding the deposition testimony of Faughn and Mesko.
 
 C.
 
 24
 Hannah next contends that during his cross-examination the District Court erred in admitting for impeachment purposes evidence of his prior criminal convictions. He argues that the prejudicial effect of such evidence outweighed its probative value.
 
 
 25
 During cross-examination by two defense attorneys, Hannah was asked to acknowledge that he had been convicted of, inter alia, rape, sodomy, kidnapping, larceny, receiving stolen property, and burglary. Hannah's counsel renewed his pre-trial objection to any reference to Hannah's prior criminal convictions. Hannah's pre-trial objection and motion had been summarily denied without prejudice and without explanation. At trial, the District Court overruled the objection on the ground that the felony convictions were less than ten years old, Tr. Tr. at 72-74, and permitted defense counsel to ask Hannah about those convictions.
 
 
 26
 This Court has held that in civil cases a district court is under a duty to weigh the probative value of such evidence against the danger of unfair prejudice before a witness can be cross-examined about his prior criminal convictions for impeachment purposes. Radtke v. Cessna Aircraft Co., 707 F.2d 999, 1000 (8th Cir.1983); Czajka v. Hickman, 703 F.2d 317, 319 (8th Cir.1983); see Fed.R.Evid. 403. Though an explicit on-the-record determination is preferred, we have affirmed a district court's admission of evidence of prior criminal convictions where it was clear from the record that the court had based its decision on the Rule 403 balancing formula. Radtke, 707 F.2d at 1001.
 
 
 27
 We are unable to find any indication in the record that the District Court explicitly or impliedly engaged in the Rule 403 balancing analysis. It appears that the District Court "merely determined the convictions were felonies and allowed the cross-examination." Czajka, 703 F.2d at 319. This was error. We hold, however, that it was harmless error.
 
 
 28
 Under Fed.R.Civ.P. 61, the admission of improper evidence is harmless error when it does not affect the substantial rights of the complaining party. Our review of the entire trial transcript convinces us that any error in admitting evidence of Hannah's prior criminal convictions for impeachment purposes was harmless. The limited cross-examination of Hannah regarding his convictions did not "significantly detract from his credibility" in this case. Czajka, 703 F.2d at 319. Hannah's credibility was impeached several times during cross-examination with evidence of prior inconsistent statements. See, e.g., Tr. Tr. at 77-78, 87-88, 100-05, 106-08, 124-26, 127-28. Moreover, defense counsel merely asked Hannah to acknowledge the convictions, some of which clearly were crimes involving dishonesty and probative of a witness's veracity, see Fed.R.Evid. 609(a)(2), and did not request details or place undue emphasis on them. Czajka, 703 F.2d at 319. In view of this, and in view of the probative value of such evidence in a case involving the credibility and conflicting testimony of witnesses, see United States v. Lewis, 626 F.2d 940, 950 (D.C.Cir.1980); United States v. Spero, 625 F.2d 779, 781 (8th Cir.1980), we hold that the admission of evidence of Hannah's prior criminal convictions on cross-examination for impeachment purposes, without a prior determination that the probative value of such evidence outweighed any danger of unfair prejudice, was harmless error.
 
 D.
 
 29
 Hannah contends that the District Court erred in directing verdicts at the close of all the evidence in favor of defendants City of Overland, Overland Police Department, Chief of Police Raymond Poeschel, and Detectives Robert Morrissey and Michael O'Brien.
 
 
 30
 In view of the jury verdict in favor of defendants Coffell and Crump, which necessarily meant that Hannah's constitutional rights were not violated, there can be no liability on the part of the other defendants who were granted directed verdicts since their liability was predicated on the underlying liability of Crump and Coffell.[5]
 
 E.
 
 31
 Finally, Hannah argues that the District Court erred in denying him leave to amend his complaint. Hannah filed his complaint on October 28, 1981. The District Court, in an order dated July 20, 1984, set the case for trial on October 22, 1984 and ordered that all pleadings and motions be filed no later than August 20, 1984. Hannah, however, did not take defendant Crump's deposition until September 25, 1984. Hannah claims that "newly discovered evidence" was obtained during Crump's deposition--namely, that St. Louis County Assistant Prosecuting Attorney Joseph Garavaglia directed Crump to arrest Hannah. Hannah sought to amend his complaint on October 2, 1984 to allege the conspiratorial complicity of St. Louis County in Hannah's arrest. The District Court summarily denied the motion without explanation or opinion. The case proceeded to trial on October 22, 1984 as scheduled.
 
 
 32
 Rule 15(a) of the Federal Rules of Civil Procedure provides that leave of court to amend a complaint "shall be freely given when justice so requires." The Supreme Court has stated that the granting of leave to amend the complaint is within the discretion of the district court, Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971), but that in the absence of any good reason for denial--such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the defendant, or futility of amendment--leave should be freely given. Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). In Foman the Court held that outright refusal to grant the leave without any justifying reason appearing for the denial was an abuse of discretion when the amendment would have done no more than state an alternative theory for recovery. Id.
 
 
 33
 Though the District Court should have stated the reasons for its denial of Hannah's motion to amend, we have considered the circumstances surrounding the motion and we cannot say that its denial was an abuse of discretion. The motion was filed less than three weeks before the trial was scheduled to start. The case had been pending for almost three years. The District Court had ordered that all pleadings and motions be filed no later than August 20, 1984. In a status report filed on April 19, 1984, Hannah advised the court that he intended to depose defendant Crump within ten days thereafter. In fact, he did not depose Crump until over five months later. Hannah already had had sufficient opportunity to obtain the allegedly "newly discovered evidence" by other means and forms of discovery. If the court had granted the motion to amend, most likely additional discovery would have been necessary (for example, the deposition of Garavaglia) and the case would have had to be continued and a new trial date set. In view of the circumstances apparent from the record, we hold that the District Court did not abuse its discretion in denying Hannah leave to amend his complaint.
 
 IV.
 
 34
 For the reasons set forth above, we hold that the District Court did not err in (1) excluding Hannah's alibi evidence; (2) excluding the deposition testimony of Stanley Faughn and Robert Mesko; (3) granting directed verdicts in favor of five of the defendants; and (4) denying leave to amend the complaint. We also hold that any error in admitting for impeachment purposes evidence of Hannah's prior criminal convictions was harmless.
 
 
 35
 The judgment of the District Court is affirmed.
 
 
 
 *
 The HONORABLE WILLIAM C. HANSON, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation
 
 
 [1]
 The Honorable H. Kenneth Wangelin, United States District Judge for the Eastern District of Missouri
 
 
 [2]
 The evidence at trial indicated that Hannah actually gave two written statements to the Overland police on July 2. The first statement was torn up apparently at Hannah's request after he had written the second statement. The second statement contained all the information in the first statement, plus additional information not in the first statement regarding a request by Bullock to Hannah to kill Robert Musgrove
 
 
 [3]
 We first note that Hannah did testify without objection that he did not kill Robert Musgrove and that he did not know who did. Trial Transcript at 40-41. As noted above, this evidence is irrelevant to a claim of lack of probable cause to arrest. Second, although the District Court properly instructed the jury that Hannah's innocence of the murder was not relevant to his claim, Tr. Tr. at 57-58, the court expressly ruled that Hannah could introduce evidence to prove that the police ignored or refused to investigate evidence showing Hannah's innocence. Tr. Tr. at 69. Hannah testified that his sister, his brother, and a neighbor would have provided exonerating information regarding his whereabouts on the night of the murder. Tr. Tr. at 70-71, 85, 122. None of these persons was called as a witness on behalf of Hannah at trial. Moreover, any "exonerating" information they may have had would not diminish the fact that Hannah's own statement placed him near the scene of the murder at the approximate time of the murder
 
 
 [4]
 For example, the exact number of bullets fired, the caliber of the murder weapon, the existence of a life insurance policy, and the possibility that the shots were fired from the nearby alley were not disclosed to either the general public or the press. Tr. Tr. at 215-16, 242-43, 248, 252-54
 
 
 [5]
 Since the jury found no constitutional violations, we need not decide whether the actions taken by the Overland police officers were pursuant to official municipal policy or custom, as required under Monell v. Department of Social Services, 436 U.S. 658, 690-95, 98 S.Ct. 2018, 2035-38, 56 L.Ed.2d 611 (1978), in order to impose liability on a municipality. See Pembaur v. City of Cincinnati, --- U.S. ----, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Nor do we need to discuss the circumstances under which a police officer or other individual defendant may be liable for passive noninterference (or failure to intervene) if he observes unconstitutional conduct. See Putman v. Gerloff, 639 F.2d 415, 423 (8th Cir.1981)