George R. ARNOTT, Sr., Appellee,

v.

John MATAYA, Greg Connolly,
Appellants.

No. 92–2566.

United States Court of Appeals,
Eighth Circuit.

Submitted March 17, 1993.

Decided May 28, 1993.

Gary P. Thimsen, Sioux Falls, SD, argued (A. Russell Janklow, on the brief), for appellants.

Marie E. Hovland, Sioux Falls, SD, argued (Edwin E. Evans, on the brief), for appellee.

Before FAGG, Circuit Judge, LAY and HEANEY, Senior Circuit Judges.

LAY, Senior Circuit Judge.

This is an appeal from the district court's [1] denial of a motion for summary judgment for claims brought against police officers John Mataya and Greg Connolly under 42 U.S.C. § 1983, for false arrest and use of excessive force.[2] Mataya and Connolly moved for summary judgment on two grounds: (1) they are entitled to qualified immunity; and (2) they had probable cause to arrest plaintiff, thereby barring a suit for false arrest. The district court determined that genuine issues of material fact existed and denied the motion. We affirm.

## FACTUAL BACKGROUND

On January 21, 1991, John Arnott, the son of plaintiff George Arnott, was working at his shop, G & H Radiator, in Sioux Falls, South Dakota. John observed one of his employees sitting in a Sioux Falls police officer's vehicle, which was located in the parking lot of G & H Radiator. John approached the vehicle and asked the policeman, Officer Harrison, why the employee had been stopped. A second patrol car, driven by Officer Tupper, came upon the scene, and a struggle ensued between John and Officers Tupper and Harrison. During the struggle, George Arnott (Arnott) arrived at the scene and saw his son engaged in the scuffle with the two police officers.

The parties differ widely on what occurred after the elder Arnott's arrival at the scene. Defendants claim that during the struggle with John, Arnott approached and touched his son, but did not identify himself as John's father. John broke away from the officers and entered the shop, followed by Officers Tupper and Harrison. Arnott also entered the shop and instructed an employee to close the overhead shop door. Because the situation was becoming increasingly hostile, Officer Tupper radioed a 10–99 code, signaling that an officer was in need of assistance. John and the officers continued to struggle, moving toward the parts room. Arnott approached and put his hand on Officer Harrison's shoulder.

In response to the 10–99 call, Officer Mataya and Sergeant Connolly arrived at the scene and approached the front door. They saw Arnott walking toward the front door. Sergeant Connolly claims he saw Arnott make contact with the door and thought he was locking it. After finding the door locked, Mataya and Connolly started kicking and beating it. Arnott walked away from the door, turned his head and waved at the offi-

---

1. The Honorable John B. Jones, Chief Judge, United States District Court for the District of South Dakota.

2. The suit also includes several pendent state law claims.

Arnott also brought suit against two other police officers, Robert Harrison and Richard Tupper, who were subsequently dismissed from the suit. In addition, Arnott sued the City of Sioux Falls, South Dakota. The City moved for summary judgment. The district court denied the motion. The City is not involved in this appeal.

cers. Officer Mataya alleges that through the window in the door, he saw Arnott grab at Officers Harrison and Tupper. Eventually, Mataya and Connolly gained entrance through a side door which was unlocked. They found Arnott in his office. Another officer was attempting to pin one of Arnott's arms behind his back. The officers claim that Arnott resisted arrest and that they were able to subdue him only after applying a submission carotid neck restraint.

Arnott's version of the facts is quite different. He claims that when he arrived, he observed Officers Harrison and Tupper beating his son. John freed himself from the officers and staggered through the big overhead door and back to the parts room with the two officers behind him. Because it was cold outside, Arnott yelled to one of the employees to close the big overhead door. At this time, John and Officers Harrison and Tupper were in a corner of the parts room, where the officers were attempting to pin John to the floor. Arnott entered the room and put his hand on one officer's shoulder, asking him to leave John alone, but did not touch the arms or backs of either officer. Arnott claims that he realized that things were out of control and he did not want customers to enter, so he locked the front door. He said he did not see any officers approaching the door. Arnott then went into his office and telephoned the sheriff's department to inform them of the situation.

After making the telephone call, Arnott claims he looked outside and saw Sergeant Connolly charging toward the front door and pulling out his pistol. He was about to unlock the door when Sergeant Connolly pointed his weapon towards it as if ready to shoot the lock. Arnott therefore stepped back from the door and waved to the officers to go to the side door. Arnott contends that he did not grab at Officers Tupper and Harrison, as Officer Mataya alleges, and that it would have been physically impossible for Officer Mataya to have seen through the front door into the area where John and Officers Tupper and Harrison were located. When Sergeant Connolly quit kicking at the front door, Arnott unlocked it. He stated he started walking toward his office when he

was hit from behind and thrown face down on the floor. Arnott contends that Officer Mataya then choked him until he passed out.

Arnott was arrested and charged with three offenses under South Dakota laws: aggravated assault, S.D.Codified Laws Ann. § 22–18–1.1(3); resisting arrest, S.D.Codified Laws Ann. § 22–11–4; and obstructing a law enforcement officer, S.D.Codified Laws Ann. § 22–11–6. A grand jury subsequently indicted Arnott on all three charges. At trial, the circuit court judge directed a verdict against the State on the resisting arrest charge. The remaining two charges were submitted to the jury, which returned a not guilty verdict on both counts. This lawsuit followed.

DISCUSSION

A. *Qualified immunity*

Defendants appeal on the ground they are shielded from 42 U.S.C. § 1983 liability by the doctrine of qualified immunity. *See Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The test for qualified immunity is "whether a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed." *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987). Thus, even if probable cause is in fact absent, defendants may be entitled to qualified immunity. *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 976 (8th Cir.1993); *Gainor v. Rogers*, 973 F.2d 1379, 1382 (8th Cir.1992).

The district court denied the motion for summary judgment, reasoning that a dispute of material fact existed for a jury to determine whether the officers reasonably believed they had probable cause to arrest Arnott. As a general rule, the question of qualified immunity is ordinarily one of law for the court, and the Supreme Court has emphasized that immunity should be determined at the earliest possible stage in litigation. *See Hunter v. Bryant*, — U.S. —, —, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991). Thus, if an officer alleges conduct by the arrestee giving rise to probable cause and those facts are undisputed, the qualified

immunity defense is available to the officer. *See id.* (undisputed facts established that Secret Service agents were entitled to qualified immunity).

■ This does not mean, however, that courts may always decide questions of qualified immunity on summary judgment. If the arrestee challenges the officer's description of the facts and presents a factual account where a reasonable officer would *not* be justified in making an arrest, then a material dispute of fact exists. Where there is a genuine issue of material fact surrounding the question of plaintiff's conduct, we cannot determine, as a matter of law, what predicate facts exist to decide whether or not the officer's conduct clearly violated established law. *Gainor*, 973 F.2d at 1384–85.

■ Here, Arnott has presented a factual scenario whereby a reasonable officer could not have believed that Arnott's arrest was lawful in light of clearly established law. After examining Arnott's allegations and the evidentiary support in the record, we find his claims sufficiently supported by the record to overcome Officer Mataya and Sergeant Connolly's qualified immunity defense.

### B. *Probable Cause to Arrest*

■ Officers Mataya and Connolly also argue that the district court erred in denying summary judgment because the officers had probable cause to arrest Arnott. If defendants in fact had probable cause to arrest Arnott, then Arnott's claim for false arrest is barred. *Garionis v. Newton*, 827 F.2d 306, 308 n. 5 (8th Cir.1987); *see also Foster v. Metropolitan Airports Comm'n*, 914 F.2d 1076, 1079–80 (8th Cir.1990).

■ An officer has probable cause to arrest a suspect without a warrant if the "facts and circumstances within the officer's knowl-

edge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343 (1979). The fact that the person arrested is later found innocent is not material. *Pierson v. Ray*, 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967); *Linn v. Garcia*, 531 F.2d 855, 861 (8th Cir.1976).

■ The facts in this case are greatly disputed. If the version of the facts presented by defendants is true, then defendants had probable cause to arrest Arnott. However, if Arnott's version of the facts is true, then defendants lacked probable cause to arrest him. In such a case, where the facts are disputed or where they are subject to different inferences, the question of probable cause is for the jury and summary judgment is inappropriate. *Linn v. Garcia*, 531 F.2d at 861.

■ Defendants contend, however, that the undisputed facts by themselves establish probable cause to arrest Arnott at least for the charge of obstructing a law enforcement officer.[3] They urge that it is undisputed that they had received a call for help from an officer; that when they approached the front door, they saw Arnott inside by the front door; and that Arnott refused to unlock and open the door. We do not agree. Under the facts and circumstances of this case, a jury could reasonably believe that Arnott did not refuse to unlock the door, but hesitated to avoid being shot at through the door. Thus, we conclude that the district court properly denied summary judgment on the question of whether defendants had probable cause to arrest.[4]

**3.** To avoid liability for false arrest, an arresting officer need have probable cause to carry out an arrest for any offense arising out of an incident. That the officer may have mistakenly thought he had probable cause to arrest for other offenses is immaterial so long as probable cause existed for the one offense. *Linn v. Garcia*, 531 F.2d at 862.

**4.** Defendants urge this court to find that the grand jury's indictment of Arnott insulates them from § 1983 liability for false arrest. This argu-

ment is without merit. Defendants can cite no cases which so hold; rather, they rely on language, taken out of context, from cases dealing with improprieties in the procurement of a warrant. *See Foster v. Metropolitan Airports Comm'n*, 914 F.2d 1076, 1079–80 (8th Cir.1990); *Jureczki v. City of Seabrook*, 760 F.2d 666, 668–69 (5th Cir.1985). Indeed, to hold as defendants suggest would eliminate all § 1983 lawsuits for

Accordingly, we affirm the district court's denial of defendants' motion for summary judgment.[5]

false arrest, a result contrary to congressional intent.

5. Defendants have not appealed the district court's denial of summary judgment on the issue of excessive force and thus we do not discuss this issue.