# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-4146/4147/4148

_____

| | | |
|---|---|---|
| Larry R. Smithson, Ryan Smithson, and Chris Smithson, | * * * | |
| Appellees, | * * * | Appeal from the United States District Court for the Southern District of Iowa. |
| vs. | * * | |
| Jeff Aldrich, Kenneth Brown, Thomas Heller, Mike McBride, Debra Richardson, Judy Stanley, Gregg Westemeyer, and the City of Des Moines, Iowa, | * * * * * * | |
| Appellants. | * | |

_____

Submitted: September 15, 2000
Filed:      December 21, 2000

_____

Before RICHARD S. ARNOLD, Circuit Judge, BATTEY,[1] and MOODY,[2] District Judges.[3]

_____

[1]The Honorable Richard H. Battey, United States District Judge for the District of South Dakota, sitting by designation.

[2]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas, sitting by designation.

[3]Pursuant to 28 U.S.C. § 46(b), the Chief Judge certified the existence of a judicial emergency necessitating the designation of a panel consisting of fewer than two members of the Court of Appeals.

_____

BATTEY, District Judge.


Larry, Ryan, and Chris Smithson brought an action against Officers Kenneth Brown, Gregg Westemeyer, Mike McBride, Thomas Heller, Judy Stanley; Sergeants Debra Richardson and Jeff Aldrich; and the City of Des Moines seeking damages under 42 U.S.C. § 1983 for various acts occurring on two separate occasions. The officers seek a reversal of the district court's denial of summary judgment on qualified immunity grounds on appellees' Constitutional claims. We reverse.

**FACTS**


This case arises out of two different encounters between Des Moines police officers and the owner of a downtown bar, appellee Larry Smithson (Smithson). On August 26, 1996, at approximately 10:55 p.m., Officer Kenneth Brown (Brown) and Officer Mike McBride (McBride) responded to a complaint of loud music coming from Smithson's bar. At 10:58 p.m. McBride radioed for assistance from Sergeant Debra Richardson (Richardson). Upon arrival Richardson proceeded to the front door of the bar and talked to Smithson. After this conversation, Richardson proceeded to the patio area where a band was playing live music over an amplified sound system. The parties agree that the bar had a permit for this outdoor concert; however, the permit expired at 11 p.m. The parties also agree that it was after 11 p.m. when Richardson reached the patio stage.


Upon her arrival at the patio stage, Richardson issued an order to turn the music off. Smithson followed Richardson onto the patio stage and addressed the crowd over the band's sound system. The parties dispute the contents of Smithson's message to the crowd; however, there is no dispute that after these statements were made the crowd reacted in a hostile manner towards Richardson and her fellow

-2-

officers.  Specifically, the crowd started an obscene chant directed at the Police.  A call was then made for backup.  When backup arrived, Smithson was arrested and charged with disorderly conduct and a violation of a city sound ordinance.

The second incident occurred during the late night hours of September 20, 1996, and the early morning hours of September 21, 1996.  While on patrol Officer Judy Stanley (Stanley) noticed a female lying on the sidewalk outside of the bar. Stanley interviewed the female and noticed that she had injuries consistent with an assault.  During this interview the victim told Stanley that Smithson and his son Ryan Smithson (Ryan) were responsible for her injuries.  Stanley also interviewed several eyewitnesses who confirmed the victim's story.  While Stanley was conducting these interviews, Sergeant Jeff Aldrich (Aldrich) arrived upon the scene to provide supervisor support to Stanley.  Stanley and Aldrich did not interview every available witness nor did they view any video tapes from the security video system before determining that Smithson and Ryan should be arrested on assault charges.  The officers, however were unaware of the existence of these tapes.

## DISCUSSION

The district court denied the officers' motion for summary judgment on all claims presented, holding that the facts are vigorously disputed precluding summary judgment.  On appeal, the officers allege that the district court erred in concluding that they were not entitled to qualified immunity.

## I.

### A.    Jurisdictional Challenge

Appellees challenge our jurisdiction to review the district court's order. Because we can establish our jurisdiction to hear the case, we reject this challenge.

When a district court's denial of a claim of qualified immunity turns upon a issue of law, it is an appealable "final decision." See Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985). Whereas, a rejection of a qualified immunity defense is not appealable when the record presents a genuine issue of fact for trial. See Johnson v. Jones, 515 U.S. 304, 319-20, 115 S. Ct. 2151, 132 L. Ed. 2d 238 (1995). In this case, we have parsed the facts claimed by the parties to be material. The facts set forth above constitute the facts material to the issue of qualified immunity. We, therefore, must determine whether, considering these relevant facts in the light most favorable to appellees, any of the appellants knew they were violating clearly established law. Our inquiry is a quintessentially legal one, and we accordingly have jurisdiction to consider defendants' appeal. See Mitchell v. Forsyth, 472 U.S. at 528 n.9 (1985).

### B.    Qualified Immunity

A motion for summary judgment on qualified immunity grounds is only precluded when the plaintiff has "(1) assert[ed] a violation of a constitutional right; (2) demonstrate[d] that the alleged right is clearly established; and (3) raise[d] a genuine issue of fact as to whether the official would have known that his alleged conduct would have violated the plaintiff[s'] clearly established right." Goff v. Bise, 173 F.3d 1068, 1072 (8th Cir.1999) (quoting Habiger v. City of Fargo, 80 F.3d 289, 295 (8th Cir.), cert. denied, 519 U.S. 1011, 117 S. Ct. 518, 136 L. Ed. 2d 407 (1996)). Stated another way, qualified immunity shields a defendant from suit if he or she could have reasonably believed his or her conduct to be lawful "in light of clearly established law and the information [that the defendant] possessed." Anderson v. Creighton, 483 U.S. 635, 641, 107 S. Ct. 3034, 3037, 97 L. Ed. 2d 523 (1987). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Hunter v. Bryant, 502 U.S. 224, 229, 112 S. Ct. 534, 537, 116 L. Ed. 2d 589 (1991) (per curiam), quoting Malley v. Briggs, 475 U.S. 335, 343, 341, 106 S. Ct. 1092,

1097, 1096, 89 L. Ed. 2d 271 (1986). Although qualified immunity is "'an immunity from suit rather than a mere defense to liability,'" Hunter, 502 U.S. at 227 (emphasis omitted) (quoting Mitchell, 472 U.S. at 526), and therefore its availability "ordinarily should be decided by the court long before trial," Hunter, 502 U.S. at 228, the nonmoving party is given the benefit of all relevant inferences at the summary judgment stage, and if a "genuine dispute exists concerning predicate facts material to the qualified immunity issue, the defendant is not entitled to summary judgment on that ground." Pace v. City of Des Moines, 201 F.3d 1050, 1056 (8th Cir. 2000).

## II.

With regards to the incident occurring on August 26, 1996, Officer Gregg Westemeyer (Westemeyer), Brown, McBride, and Richardson contend that the district court should have granted them immunity on appellees' Fourth Amendment, First Amendment, and due process claims.

### A. Fourth Amendment

In connection to a Fourth Amendment false arrest claim, the relevant inquiry is whether the officers had probable cause to arrest Larry Smithson. See Baker v. McCollan, 443 U.S. 137, 142, 99 S. Ct. 2689, 2693-94, 61 L. Ed. 2d 433 (1979); Hannah v. City of Overland, Mo., 795 F.2d 1385, 1389 (8th Cir. 1986) (holding § 1983 action lies for warrantless arrest without probable cause). Probable cause exists if "the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed . . . an offense" at the time of the arrest. Hannah, 795 F.2d at 1389 (quoting United States v. Wallraff, 705 F.2d 980, 990 (8th Cir. 1983)). "[T]he probability, and not a prima facie showing, of criminal activity is the standard of probable cause." Id. (quoting Wallraff, 705 F.2d at 990). Therefore, law enforcement officers are entitled to qualified immunity if they arrest a suspect under the mistaken belief that they have

probable cause to do so–provided that the mistake is objectively reasonable.  Hunter v. Bryant, 502 U.S. 224, 228-29, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991).  Stated otherwise, "The issue for immunity purposes is not probable cause in fact but arguable probable cause."  Habiger, 80 F.3d at 295 (citation omitted).

In this case, it is undisputed that on August 26, 1996, Smithson was the owner of a bar which had a band playing live music over an amplified sound system past 11 p.m., in violation Des Moines City Code Section 16-144.[4]  The officers were present and observed this violation.  It is immaterial that Smithson was also charged with disorderly conduct.  See Arnott v. Mataya, 995 F.2d 121, 124 n.3 (8th Cir. 1993) (an officer need only demonstrate probable cause to carry out an arrest for any offense arising out of an incident.  That the officer may have had a mistaken belief that she had probable cause to arrest for other offenses is immaterial so long as probable cause existed for the one offense).  The fact that the offense was a misdemeanor is also immaterial to our Fourth Amendment analysis.  See United States v. Watson, 423 U.S. 411, 418, 421-24, 96 S. Ct. 820, 46 L. Ed. 2d 598 (1976) (a police officer is permitted to arrest without a warrant if a misdemeanor is committed in the officer's presence).  Thus, the officers in this case had, at least, arguable probable cause to conclude that Smithson had violated the city's sound ordinance.   Accordingly, we conclude that Brown, Westemeyer, McBride, and Richardson are entitled to qualified

---

[4]Des Moines City Code Section 16-144 reads as follows:

Regulation of Sound Equipment and Sound Amplifying Equipment.
    (a)    Except for activities open to the public and for which a permit has been issued by the city under this section, no person shall so operate, play or permit the operation or playing of any sound equipment:
    (1)    As to create a noise disturbance across a residential real property boundary or outdoors within a noise sensitive area.
    (2)    As to create a noise disturbance 50 feet from the device, when operated in or on a motor vehicle on a public right-of-way or public space, or in a boat on public waters.

immunity on appellees' Fourth Amendment false arrest claim.  See Johnson v. Schneiderheinz, 102 F.3d 340 (8th Cir. 1996); see also Hannah v. City of Overland, 795 F.2d 1385, 1389 (8th Cir. 1986) (recognizing that warrantless arrests with probable cause do not give rise to § 1983 claims).

## B.    First Amendment

To be successful on his First Amendment claim, Smithson must demonstrate that he was "deprived of a right 'secured by the Constitution and the laws' of the United States."  McIntosh v. Arkansas Republican Party-Frank White Election Comm., 766 F.2d 337, 340 (8th Cir. 1985) (quoting Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978) (quoting 42 U.S.C. § 1983)).  Smithson claims that his arrest was pretextual; that is, he argues that the officers arrested him not to enforce the city's sound ordinance, but because of their disagreement with his statements to the crowd challenging the decision to stop the music.  On the facts of this case, we seriously doubt this claim of pretext.  There is no dispute that during the August 26, 1996, incident, Smithson followed Richardson onto the patio stage and addressed the crowd.  There is also no dispute that after Smithson addressed the crowd the situation turned hostile towards the officers.  Under these circumstances Richardson and her fellow officers could reasonably believe that Smithson in some way incited the crowd.  We know of no First Amendment right which would protect speech of persons inciting a crowd to obstruct a police officer's duty to enforce the law.  Even if the officers' belief that Smithson incited the crowd was a mistake, the purpose of the qualified immunity doctrine is to provide ample room for mistaken judgments and to protect "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986).

Furthermore, even if this pretextual argument were proven at trial, it would not nullify the finding of probable cause to believe that Smithson was violating the sound

ordinance, nor would it prevent the application of the qualified immunity defense. See Habiger v. City of Fargo, 80 F.3d 289, 296 (8th Cir. 1996) (citing United States v. Bloomfield, 40 F.3d 910, 915 (8th Cir. 1994) (en banc), cert. denied, 514 U.S. 1113, 115 S. Ct. 1970, 131 L. Ed. 2d 859 (1995); Foster v. Metropolitan Airports Comm'n, 914 F.2d 1076, 1081 (8th Cir. 1990)). Since we apply an objective and not a subjective standard, in our view, the officers' judgment was objectively reasonable. Therefore, the claim of pretext is immaterial and the officers are entitled to qualified immunity on appellees' First Amendment claim. See Malley, 475 U.S. at 341, 106 S. Ct. at 1096.

## C.    Due Process

The Supreme Court's most recent pronouncement emphasizes that actionable cases must demonstrate a "level of . . . abuse of power," or activity that was "so 'brutal' and 'offensive' that it did not comport with traditional ideas of fair play and decency." County of Sacramento v. Lewis, 523 U.S. 833, 847, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998), quoting Breithaupt v. Abram, 352 U.S. 432, 435, 77 S. Ct. 408, 1 L. Ed. 2d 448 (1957), itself quoting Rochin v. California, 342 U.S. 165, 174, 72 S. Ct. 205, 96 L. Ed. 183 (1952). In this case, appellees' allegation of a conspiracy to provide false testimony is conclusory and therefore fails to state a claim. See Rogers v. Bruntrager, 841 F.2d 853, 856 (8th Cir. 1988) (conspiracy claim requires allegations of specific facts showing a "meeting of minds" among alleged conspirators). Thus, appellees have failed to establish that the officers' conduct constituted "abusive, arbitrary, or oppressive government conduct." Gregory v. City of Rogers, Ark., 974 F.2d 1006, 1009 (8th Cir. 1992); see also Chesterfield Dev. Corp. v. City of Chesterfield, 963 F.2d 1102, 1104 (8th Cir. 1992) (noting that substantive due process claims should be limited to "truly irrational" governmental action). Therefore, we conclude that the officers are entitled to summary judgment on appellees' due process claim.

**III**.

The second incident occurring on September 21, 1996, involves appellants Officer Stanley and Sergeant Aldrich. These appellants contend that the district court should have granted them qualified immunity on appellees' Fourth Amendment and due process claims.

### A.     Fourth Amendment

As stated above, the relevant inquiry in a Fourth Amendment false arrest claim is whether the officers had probable cause to arrest appellees. See Baker, 443 U.S. at 142, 99 S. Ct. at 2693-94; Hannah, 795 F.2d at 1389 (holding § 1983 action lies for warrantless arrest without probable cause). Appellees claim that Officer Stanley and Sergeant Aldrich violated the Fourth Amendment when they ignored arguably exculpatory evidence (video tapes) and failed to interview all of the available witnesses prior to the arrest.

The facts of this incident, viewed in a light most favorable to appellees, establish that Stanley interviewed the victim and several eyewitnesses to the incident. Stanley noticed that the victim had markings consistent with an assault and she was told by the victim and the eyewitnesses that Smithson and his son Ryan were the responsible parties.

As for appellees' claim that the officers ignored exculpatory video tapes, it is undisputed that neither Stanley nor Aldrich knew of the existence of these video tapes prior to making the arrest. Furthermore, the fact that the officers did not interview every available witness also does not bar a finding of probable cause. Brodnicki v. City of Omaha, 75 F.3d 1261, 1264 (8th Cir.) cert. denied, 519 U.S. 867 (1996); Morrison v. United States, 491 F.2d 344, 346 (8th Cir. 1974) (officers are not required to "conduct a mini trial" before making an arrest). Probable cause is to be determined

upon the objective facts available to the officers at the time of the arrest. See id. At the time of appellees' arrest in this case, the officers had, at least, arguable probable cause to conclude that Smithson and his son Ryan had committed an assault. Even if this were a mistaken belief the officers would still be entitled to a qualified immunity defense. See Malley, 475 U.S. at 341, 106 S. Ct. at 1096. Accordingly, we conclude that Stanley and Aldrich are entitled to qualified immunity on appellees' Fourth Amendment false arrest claim. See Hannah v. City of Overland, 795 F.2d 1385, 1389 (8th Cir. 1986) (recognizing that warrantless arrests with probable cause do not give rise to § 1983 claims).

## B.    Due Process

Appellants Stanley and Aldrich also contend that they should be granted summary judgment on appellees' due process claim and quote the Supreme Court as follows:

[w]here a particular [constitutional] amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.

Albright v. Oliver, 510 U.S. 266, 273, 114 S. Ct. 807, 813, 127 L. Ed. 2d 114 (1994). "The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it." Id. at 274, 114 S. Ct. at 813.

Appellees' due process claim against Stanley and Aldrich alleges an arrest without probable cause. This claim has been properly addressed under a Fourth Amendment analysis. Accordingly, we conclude that Stanley and Aldrich are entitled to summary judgment on appellees' due process claim. See id.

**CONCLUSION**

For the reasons stated herein, the district court's denial of summary judgment to Brown, Westemeyer, McBride, and Richardson on appellees' Fourth Amendment, First Amendment, and due process claim is reversed, and the district court's denial of summary judgment to Stanley and Aldrich on appellees' Fourth Amendment and due process claim is reversed. We remand the case for further proceedings consistent with this opinion.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.