# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3812

_____

| | | |
|---|---|---|
| Avone Kukla, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the District |
| v. | * | of South Dakota. |
| | * | |
| Andrew D. Hulm; Scott Brown, | * | |
| | * | |
| Appellants. | * | |

_____

Submitted: June 11, 2002

Filed: November 15, 2002

_____

Before BOWMAN, FAGG, and BYE, Circuit Judges.

_____

FAGG, Circuit Judge.

Motor carrier inspector Scott Brown and Trooper Andrew D. Hulm arrested Avone Kukla, a commercial truck driver, for failing to produce his logbook. After a South Dakota judge dismissed the charges against Kukla, Kukla brought this federal lawsuit against Brown for illegal arrest and against Hulm for using excessive force. The district court* denied Brown and Hulm's motion for summary judgment based on

_____

*The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota.

qualified immunity, finding there were questions of fact about the arrest's validity and the amount of force used. Brown and Hulm appeal. We affirm.

We review the denial of summary judgment de novo. As we explain the facts, we must give Kukla, the party opposing summary judgment, the benefit of all reasonable inferences. Smithson v. Aldrich, 235 F.3d 1058, 1061 (8th Cir. 2000). According to Kukla's affidavit, on November 25, 1998, he was driving west on I-90 when he saw a sign indicating "truck inspection ahead." App. at 61. Testimony in Kukla's state court proceeding indicates the inspection was at a public rest area. App. at 86, 92. Kukla had never seen an inspection station at that location before. App. at 61-62. He pulled into the rest area, but did not see any official emblems or insignia confirming an inspection was authorized by the state. App. at 62. Kukla had never had any problems with inspections or weigh stations, including the day before at the Tilford weigh station located on eastbound I-90. At the rest area, Kukla was approached by a person wearing clothing different from that worn by inspectors at the Tilford station, and Kukla saw no insignia, emblem, badge, or name tag indicating who the individual was. Id. Kukla noticed an old, blue Suburban, which did not appear to have any insignia. Kukla had heard of phony truck inspections being set up in other states, and the situation seemed peculiar to him. Id. The person who approached Kukla, later identified as motor carrier inspector Scott Brown, asked for Kukla's driver's license and logbook. Kukla pulled them out and showed him he had them, but told the person he would not turn them over until the person identified himself. Id. Brown refused to identify himself, and stated he didn't have to. Brown told Kukla he was "putting [his] truck out of service for eight hours," and told Kukla to pull over. Kukla complied. Id.

Within a few seconds, App. at 88, a car with an official South Dakota emblem drove up, App. at 62. A uniformed person, motor carrier enforcement officer Lawrence Bryant, got out of the car. Bryant approached Kukla, asked why Kukla would not comply with Brown, and asked for Kukla's records. Id. at 63. Kukla

explained Brown would not identify himself and he looked different from other inspectors he had encountered the day before. Because Kukla could see Bryant was acting on behalf of the State of South Dakota, Kukla gave Bryant his license and logbook. Bryant found everything in order, and left the scene. Id.

Brown then issued a ticket to Kukla for failing to produce his logbook, which Kukla refused to sign. Id. Brown radioed the South Dakota Highway Patrol (SDHP) for assistance and Trooper Andrew Hulm responded. Bryant overheard the call to the highway patrol and returned to the inspection point. During this time, Kukla retrieved his camera and appeared to take pictures of the scene. When Hulm arrived, he spoke with Brown and then advised Kukla he had to sign the ticket or be subject to arrest. Id. at 64. Kukla refused to sign the ticket and Hulm announced he was going to arrest Kukla. Kukla was handcuffed by Hulm and Bryant and taken into custody. Kukla asserts he did not resist arrest, but rather was unnecessarily manhandled. Kukla alleges that when Hulm told him he was under arrest, he protested, but did not take an aggressive stance. A doctor determined that as a result of the arrest, Kukla strained and sprained his right shoulder, distal right clavicle, right elbow, and right wrist.

To avoid summary judgment based on qualified immunity, Kukla had to assert a violation of a constitutional right, show the alleged right was clearly established at the time of the alleged violation, and raise a genuine issue of material fact about whether Brown and Hulm would have known their alleged conduct would have violated his clearly established right. Smithson, 235 F.3d at 1061. In other words, qualified immunity shields Brown and Hulm from this lawsuit if they could have reasonably believed their conduct was lawful in light of clearly established law and the information they possessed. Id. If an officer alleges conduct by an arrestee giving rise to probable cause and those facts are undisputed, the officer is entitled to qualified immunity. Arnott v. Mataya, 995 F.2d 121, 123-24 (8th Cir. 1993). On the other hand, if the arrestee challenges the officer's description of the facts and presents

a factual account that would not permit a reasonable officer to make an arrest, then there is a material factual dispute precluding summary judgment. Id. at 124.

Kukla asserts a violation of his Fourth Amendment right to be free from arrest without probable cause. This right was clearly established at the time of Kukla's arrest. Id. Kukla was arrested without probable cause if a reasonable person would not have believed Kukla "'had committed . . . an offense' at the time of the arrest." Smithson, 235 F.3d at 1062 (emphasis added) (quoting Hannah v. City of Overland, Mo., 795 F.2d 1385, 1389 (8th Cir. 1986)). Brown contends he could reasonably believe that a citation is properly issued to a driver who initially refused to produce his logbook, but later produced it at the request of a different inspector. Brown does not suggest Kukla was lawfully arrested for failing to sign the citation.

Under South Dakota Codified Laws § 32-2-7, "agents, patrol officers, motor carrier enforcement officers, and motor carrier inspectors may examine any . . . registration, license, or permit to determine if the motor carrier is properly registered, licensed, or permitted." The same specified individuals may place violators of any of the laws or regulations governing motor carriers under arrest without a warrant for criminal offenses committed in their presence. Id. § 32-2-8. South Dakota has adopted federal regulations regarding motor carriers. S.D. Cod. Laws § 49-28A-3. One of the adopted regulations requires drivers to record their duty status in a log, and states failure to complete or preserve the record, or making false reports, subjects the driver and carrier to prosecution. 49 C.F.R. § 395.8. Here, according to the SDHP case report, the district court, and Brown and Hulm's brief, Kukla was arrested for "Failure to Produce a Log Book SDCL 49-29A-3." App. at 24, 95, Appellant's Brief at 5. Neither the pertinent federal regulations nor South Dakota laws criminalize a trucker's failure to turn over his logbook. The affidavit of Hulm's supervisor, SDHP Lieutenant Chuck Hoffman, states it is the policy of the SDHP that any driver who refuses to produce a driver's license or logbook on demand by a fully uniformed officer will be cited for failure to have or produce a license or logbook.

App. at 37. Full uniform includes badges, name tags, appropriate patches, and insignia. Id. When in full uniform and on duty, neither SDHP motor carrier inspectors nor troopers will provide further identification before proceeding with an inspection or arrest. Id.

Viewing the facts in Kukla's favor, we conclude Brown could not reasonably believe Kukla "'had committed . . . an offense' at the time of the arrest." Smithson, 235 F.3d at 1062. Before Brown arrested Kukla, Kukla had asked Brown to identify himself as an authorized official and Brown had refused to do so, Brown saw Kukla turn over his records to one of Brown's colleagues who was clearly identifiable as an authorized official, and the authorized official had found nothing wrong. Only a few seconds elapsed between the time Kukla left Brown to pull over his truck and the time Bryant approached Kukla and obtained his records. Given these facts, Kukla did not violate the law requiring truckers to maintain logbooks. Further, the South Dakota statutes giving inspection and arrest power to specified individuals make clear that a civilian cannot examine the records of truck drivers or make arrests for violations. Even the SDHP policy states the officer must be in proper uniform. There is simply no offense when, as here, a trucker refuses to turn records over to a person who is not identifiable as an authorized officer or inspector.

In sum, viewing the facts in Kukla's favor, we conclude a reasonable jury could find there was no probable cause for the citation and thus no probable cause for Kukla's arrest. Because Kukla presents a factual account that would not permit a reasonable officer to make an arrest, there is a material factual dispute precluding summary judgment. Arnott, 995 F.2d at 124. The district court thus properly denied summary judgment to Brown. Id. Of course, the jury may disbelieve Kukla's testimony at trial, but it is not our function to remove the credibility assessment from the jury. Because Kukla could prevail if the jury believes him, summary judgment for Brown is improper.

Second, Kukla contends Hulm violated his Fourth Amendment right to be free from excessive force.  This right was also clearly established at the time of Kukla's arrest.  <u>Guite v. Wright</u>, 147 F.3d 747, 750 (8th Cir. 1998).  Force is excessive when an officer's actions are not objectively reasonable in light of the facts and circumstances confronting him.  <u>Id.</u>  Here, Kukla alleges that although he did not resist arrest or take an aggressive stance, Hulm forced him against his truck, twisted his arm, and raised it high behind his back injuring his collar bone, shoulder, neck, and wrist.  Kukla also claims the handcuffs were so tight that they broke his wrist and were not loosened for fifteen minutes despite his repeated complaints.  Considering the circumstances, including the offense at issue, the lack of an immediate safety threat, and the lack of active resistance to arrest, we agree that there is a genuine issue of whether the force used was excessive, so the district court properly denied summary judgment to Hulm.  <u>See</u> <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989).

Accordingly, we affirm the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.