# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3770

_____

| | | |
|---|---|---|
| Benjamin A. Anderson; | * | |
| Benjamin M. Anderson, | * | |
| | * | |
| Appellants, | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| | * | Eastern District of Missouri. |
| Franklin County, Missouri; and | * | |
| Gary F. Toelke, Doug Winholt, | * | |
| Janice Crews, in their individual | * | |
| and official capacities, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: April 19, 1999
Filed: September 21, 1999

_____

Before RICHARD S. ARNOLD and WOLLMAN,[1] Circuit Judges, and
        MAGNUSON,[2] District Judge.

_____

MAGNUSON, District Judge

---

[1]The Honorable Roger L. Wollman succeeded the Honorable Pasco M. Bowman as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the end of the day on April 23, 1999.

[2]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota, sitting by designation.

Benjamin A. Anderson and Benjamin M. Anderson seek a new trial, asserting that the district court[3] erred in excluding an eyewitness' testimony and in denying a motion to permit examination of police audio tapes for evidence of tampering. Further, appellants challenge the district court's[4] adverse entry of summary judgment and dismissal of their federal and state claims for false arrest and imprisonment and various other constitutional claims. We affirm.

On February 1, 1994, the Franklin County Sheriff's Department dispatched officers to Benjamin M. Anderson's ("Anderson Jr.") home in response to a family dispute 911 call placed by Anderson Jr.'s stepdaughter. While en route, appellee Deputy Doug Winholt was radioed that an outstanding Illinois warrant existed for a "Benjamin Anderson" for theft over $10,000.00 by deceit.

Winholt reported that, upon his arrival on the scene, he observed Benjamin A. Anderson ("Anderson Sr.") standing in the middle of the driveway holding a rifle. Anderson Sr. had initially positioned himself in the driveway to block his step-granddaughter from leaving the premises. He had, however, on hearing the approaching police siren, determined that he would intercept the police in order to talk to them and explain the situation. After Winholt stopped his car and told Anderson Sr. that he needed to enter the property, Anderson Sr. asked if the officer had a warrant. Winholt responded affirmatively. He then asked Anderson Sr. to relinquish his gun. Anderson Sr. refused. After several attempts, Winholt was eventually able to seize the weapon. He then got back in his vehicle, intending to proceed to Anderson Jr.'s house. His progress was impeded, however, by Anderson Sr., who repeatedly stepped

---

[3]The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri.

[4]The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri entered summary judgment on several of appellees' claims prior to transfer of the case to the Honorable Rodney W. Sippel.

in front of the patrol car. Attempting to get around him, Winholt admits striking Anderson Sr. with his vehicle. According to Anderson Sr., the third time he was struck he fell forward onto the vehicle's hood and Winholt drove several feet up the driveway before Anderson Sr. rolled from the car. Winholt then radioed his backup, appellee Corporal Janice Crews, and instructed her that on her arrival she should arrest Anderson Sr. for interfering with an officer in the line of duty. Crews arrived soon thereafter and, according to her deposition, Anderson Sr. refused to follow her instructions to put his hands on the hood of her car. As a result, she maced him. For his part, Anderson Sr. asserts that he did not resist arrest but rather offered to be handcuffed.

Upon his arrival at Anderson Jr.'s residence, Winholt informed Anderson Jr. that he was placing him under arrest. Anderson Jr. asked to see a warrant. According to Winholt, Anderson Jr. then resisted being handcuffed and eventually had to be subdued with mace. Anderson Jr. denies having resisted arrest. His version is that he simply turned to put out his cigarette and the next thing he knew he was maced.

Appellants were transported to the Franklin County Sheriff's Department. Anderson Sr. posted bond and was released the next day. One month later,[5] due to an apparent clerical error, Anderson Sr. was rearrested on the same charge. On January 12, 1995, Anderson Jr. pled guilty to a misdemeanor charge of theft under $300, one of the two charges on which the Illinois warrant had been issued. As part of the plea agreement, the felony charge of theft over $10,000 was dismissed.

In September 1995, Anderson Sr. filed a complaint against Franklin County, Missouri, Sheriff Toelke, and law officers Winholt and Crews, asserting claims under 42 U.S.C. § 1983 for unconstitutional arrest and imprisonment and use of excessive

---

[5] The specific date of Anderson Sr.'s second arrest is unclear from the record.

force.  He asserted  state law claims for false arrest and imprisonment, malicious prosecution, assault and battery.  In a subsequent action, Anderson Jr. sought recovery under § 1983 for unconstitutional arrest and confinement and excessive force, and state law claims for false arrest and imprisonment, assault and battery.  The actions were consolidated in June 1996.

Appellees filed a partial summary judgment motion against appellants in October 1996.  The district court entered a partial summary judgment order granting (1) summary judgment for all appellees against Anderson Sr. on his § 1983 claims and state law claims for false arrest and imprisonment; (2) summary judgment for Franklin County against Anderson Sr. on his § 1983 claim for excessive use of force and on his state law claims for malicious prosecution, assault and battery; and (3) summary judgment for Franklin County against Anderson Jr. on his § 1983 excessive force claim and state law claims for  assault and battery.  Further, the district court dismissed with prejudice appellants' various First, Second, Fifth and Sixth Amendment claims under § 1983.  The court, in May 1999, also granted appellees' renewed summary judgment motion in favor of Toelke, Winholt, and Crews and against Anderson Sr. on his claims for false arrest and imprisonment and malicious prosecution, claims based on the erroneous rearrest of Anderson Sr.  In addition, summary judgment was entered for Toelke and against Anderson Sr. on his § 1983 excessive force claim.

On April 14, 1997, the district court appointed sign language interpreter Chad Darce to interpret the deposition of Leroy Wideman, the sole eyewitness to the altercation between Anderson  Sr. and the police officers.  Wideman is both deaf and mute and cannot read or write.  However, after meeting with the witness, Darce concluded that he could not do an adequate job of interpreting because Wideman could not communicate with a standard form of sign language.  Instead, he used a self-learned and unique form of "home signing," which Darce described as similar to charades.  In a further attempt to facilitate Wideman's testimony, the district court allowed appellants to designate new interpreters: Geneva Shearburn and Antonia Wilson.  Their

process of interpretation entailed Shearburn signing questions to Wilson, who is also deaf and mute, who would then relate home signs to Wideman. Wilson then relayed Wideman's responses to Shearburn, who would communicate the responses verbally. A videotape deposition of Wideman was taken using this procedure. Appellees brought a pretrial motion to exclude Wideman's testimony. After a hearing on the matter and reviewing the tape, the court granted the motion.

In another pretrial order, noting that the motion was brought more than a year and a half after the discovery cutoff date, the district court denied appellants' request for additional expert examination of the tape recording of the police radio transmissions. The court's decision was predicated on appellants' failure to show good cause for their untimely motion and, more importantly, upon the fact that the issue of whether the tapes had been altered was moot since the question of when appellees had notice of a warrant was irrelevant to the claims that remained for trial.

The trial commenced in September 1998. The claims remaining for trial consisted of both appellants' excessive force claims under § 1983, and both appellants' state law claims for assault and battery. The jury found in favor of appellees Toelke, Winholt and Crews on all counts.

I.

Appellants first claim that the district court erred in excluding the testimony of eye witness, Leroy Wideman. In considering this issue, we recognize that a competency determination is best made with the benefit of personal observation of the witness and therefore, we will not interfere with a trial court's evidentiary ruling unless there has been a clear and prejudicial abuse of discretion. See United States v. Peyro, 786 F.2d 826, 830-31 (8th Cir. 1986).

Appellants initially attack the district court's failure to explicitly state on the

record the basis for its ruling. This assertion is without merit. The district court ruled that "upon review of the videotaped deposition of Mr. Wideman, the Court finds that the communication to and from Mr. Wideman through the interpreters is not reliable. The accuracy of questions to and responses from Mr. Wideman are highly suspect." (J.A. at 2.) The court concluded that Wideman's severe limitation in communicating would render his testimony unreliable, confusing, and misleading. Not only does the court's ruling sufficiently state the basis for its determination, its reasons are apparent from the record. See United States v. Sampson, 980 F.2d 883, 889 (3d Cir.1992).

Anderson Sr. further complains that he was denied his constitutional rights when the district court barred the testimony of Wideman and he charges that the court's exclusionary ruling requires reversal of the jury determination. Anderson Sr., however, does not set forth what facts, if any, are in dispute with respect to his altercation with the police officers. Nor does he indicate what additional information could be produced if Wideman were allowed to testify. Additionally, appellants did not provide this court with a trial transcript, which they were required to do if they were urging on appeal that the jury's conclusion was unsupported by the evidence or was contrary to the evidence. See Fed. R. App. P. 10(b); Brattrud v. Exline, 628 F.2d 1098, 1099 (8th Cir. 1980).

Considering statements in their depositions, it appears that the trial testimony of Wideman would have been largely, if not totally, cumulative of the parties' testimony. This is confirmed by interpreter Shearburn who testified at the pretrial hearing that while Wideman could communicate factual details, such as "what he saw," he could not communicate "abstract concepts like . . . what did you think the officer intended." (J. A. at 229.) Without showing how the testimony of Wideman was going to differ from that presented, appellant has not demonstrated the necessary prejudice for us to reverse the district court's decision to exclude Wideman's testimony. Our resolution of this issue is thus based on the total lack of an affirmative showing of prejudice and not on the witnesses' competency to testify.

Appellants next assert the district court erred in denying their motion to allow additional examination of the Franklin City sheriff's audio tapes by another expert, and to allow that expert to submit an opinion and testify. Absent a showing of a prejudicial abuse of discretion, we will not disturb a trial court's discovery determination. See Laubach v. Otis Elevator Co., 37 F.3d 427, 428-29 (8th Cir. 1994).

Here, we again observe that the district court took proper action to accommodate appellants. More than a year and a half after the discovery cutoff date of September 9, 1996 and almost two years after the July 22, 1996-cutoff date for naming expert witnesses, appellants requested and were allowed to have an expert examine the subject tapes. Premised on "minor questionable areas of the tape" that were reportedly found on July 22, 1998, appellants requested that another expert be allowed to examine the tapes and testify at trial. The district court denied the motion based on the discovery deadline violations, the failure to explain the untimeliness, and more importantly, on the fact that dismissal of Benjamin Anderson, Jr.'s false arrest and imprisonment claims rendered examination of the tapes moot.

As we delineate below, we concur with the dismissal of Anderson Jr.'s false arrest and imprisonment claims. Therefore, we agree with the district court that the tapes were not relevant to the issues that remained for trial. Furthermore, we are unpersuaded by appellants' argument that once they became aware of the questionable areas of the tapes, on or about June 22, 1998, they exercised due diligence in seeking to determine whether appellees had tampered with the tapes. There is no evidence to suggest that the questionable areas of the tapes could not have been identified two years earlier, and the expert properly identified within the discovery deadlines. This violation of the discovery order reveals a lack of due diligence in complying with the pretrial order and it was squarely within the district court's discretion to refuse

appellants' motion.  See Admiral Theater Corp. v. Douglas Theater Co., 585 F.2d 877, 897-98 (8th Cir. 1978) (upholding exclusion of witnesses not disclosed in compliance with discovery and pretrial orders due to the broad discretion trial courts must be afforded in order to manage judicial proceedings); Mercantile Trust Co. Nat'l Ass'n v. Inland Marine Prods., 542 F.2d 1010, 1013 (8th Cir.1976) ("Trial settings are to be taken seriously and discovery must be conducted so as to prepare the parties for trial on the date scheduled, not simply to develop new theories of defense . . . ." ).

III

Anderson Jr. next asserts that his § 1983 and state claims for false arrest and imprisonment were improperly dismissed, and summary judgement was improperly granted on his § 1983 excessive force claim and on his state claims for assault and battery.  We review a grant of summary judgment de novo, considering all evidence in a light most favorable to the nonmoving party.  See Collins v. Bellinghausen, 153 F.3d 591, 595 (8th Cir. 1998).  A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to  judgment as a matter of law.  See id.  Likewise, accepting the complaint's factual allegations as true and construing them in the light most favorable to the plaintiff, we review the district court's grant of a motion to dismiss for failure to state a claim de novo.  See Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998) (stating that it must appear beyond doubt that the plaintiff can prove no set of facts demonstrating an entitlement to relief).

Based on Anderson Jr.'s "unsupported allegation that he is pursuing post-judgment relief on the [Illinois] misdemeanor conviction . . . in which he contends he was coerced into pleading guilty," (Appellees' App. at 27) the district court dismissed without prejudice Anderson Jr.'s § 1983 and state claims of false arrest and imprisonment.  The court correctly relied on Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), which held that § 1983 damages claim that would necessarily imply invalidity

of conviction or sentence should be dismissed without prejudice unless conviction has already been invalidated. Anderson Jr. has made no showing that his conviction or sentence has been rendered invalid. His appeal thus lacks an arguable basis in the law. Accordingly, we concur with the district court that Anderson Jr.'s § 1983 claims of false arrest and imprisonment should be dismissed without prejudice. The district court also properly dismissed without prejudice Anderson Jr.'s pendent state law claims for false arrest and imprisonment. See Ivy v. Kimbrough, 115 F.3d 550, 552-53 (8th Cir. 1997) (noting that generally when federal and state claims are joined and the federal claims are dismissed on a motion for summary judgment, the pendent state claims are dismissed without prejudice).

Citing Kinney v. Kalfus, 25 F.3d 633, 634 (8th Cir. 1994), Anderson Jr. further contends that, as to his other various claims, appellees were not entitled to summary judgment based on qualified immunity because there was a "genuine issue of material fact whether a reasonable official would have known his actions violated [a constitutional] right." In support of his assertion, Anderson Jr. claimed that appellee Winholt was acting pursuant to Franklin County policy or custom and that the County had failed to properly train and supervise Winholt. Our review of the record leads us to the same result as that reached by the district court: Nothing in the record establishes that a county policy caused the constitutional deprivations allegedly suffered by appellant. See Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 691-695 (1978) (holding that local government "may not be sued under § 1983 for an injury inflicted solely by its employees or agents" on a theory of respondeat superior unless execution of the government's policy or custom resulted in a deprivation of a constitutional right). Nor is there evidence that the County had notice that its training procedures were inadequate and likely to result in violation of constitutional rights. See City of Canton, Ohio v. Harris, 489 U.S. 378, 387 (1989).

IV.

Anderson Sr. appeals the district court's decision dismissing his First

Amendment claim, asserting that his questions to the officer regarding the warrant were protected speech under the First Amendment. As the district court properly recognized, the Supreme Court in Graham v. Connor, 490 U.S. 386, 394 (1989) established that excessive force claims arising in the context of an arrest are "most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right to be secure in their persons against unreasonable seizures of the person." Having reviewed the record in full, we agree that the conduct at issue plainly implicates the protections of the Fourth Amendment and that no cognizable § 1983 First Amendment claim has been asserted. As to his Fourth Amendment claim, the uncontroverted facts surrounding Anderson Sr.'s arrest establish that the officers had probable cause to arrest him. See Hannah v. City of Overland, Mo., 795 F.2d 1385, 1389 (8th Cir. 1986) (recognizing that warrantless arrests with probable cause do not give rise to § 1983 claims). Accordingly, Anderson Sr.'s claim for false arrest is barred and thus, no false imprisonment claim lies. See Brodnicki v. City of Omaha, 75 F.3d 1261, 1266 (8th Cir. 1996).

For the foregoing reasons, we affirm the decision of the district court.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-10-