Zachariah ARRINGTON, A Minor By Rose ARRINGTON, Plaintiff,

v.

CITY OF DAVENPORT, Davenport Police Department and Officer Greg Behning, Defendants.

No. CIV.3:01–CV–30058.

United States District Court, S.D. Iowa, Davenport Division.

Jan. 6, 2003.

Kathleen Bailey, Coyle Gilman & Stengel, Rock Island, IL, for Plaintiff.

Thomas D. Warner, Davenport City Attorney, Christopher S. Jackson, Davenport, IA, for Defendants.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

WALTERS, Chief United States Magistrate Judge.

This matter is before the Court on defendants' motion for summary judgment (# 19), filed August 29, 2002. Plaintiff Rose Arrington, on behalf of her minor son Zachariah Arrington ("Arrington"), filed a complaint on May 15, 2001. The complaint stems from an investigatory stop of Arrington on June 26, 2000 by Davenport, Iowa police officer Greg Behning ("Behning"). The complaint states five causes of action: a federal civil rights claim under 42 U.S.C. § 1981 for racially discriminatory conduct in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and related Iowa constitutional provision (First Claim for Relief); a federal civil rights claim under 42 U.S.C. § 1983 for unlawful search and seizure in violation of Arrington's rights under the Fourth Amendment

to the United States Constitution and related Iowa constitutional provision (Second Claim for Relief); a federal civil rights claim for violation of the Due Process Clause of the Fourteenth Amendment[1] to the United States Constitution and related Iowa constitutional provision (Third Claim for Relief); a state law claim for assault in violation of the Iowa hate crimes statutes (Fourth Claim for Relief); and a state law claim for false arrest (Fifth Claim for Relief). With respect to each of these counts, plaintiff claims the City of Davenport and the Davenport Police Department (hereinafter collectively referred to as "the City") are liable for Behning's conduct based on the customs and practices of the City and failure to train or supervise Behning.

Federal question jurisdiction is asserted. 28 U.S.C. §§ 1331 and 1343(a)(3). The Court has supplemental jurisdiction of the state law claims. 28 U.S.C. § 1367. The parties consented to proceed before a United States Magistrate Judge and the case was referred to the undersigned for all further proceedings on October 10, 2001. *See* 28 U.S.C. § 636(c).

## I.

Defendants' motion for summary judgment is subject to the following well-established standards. A party is entitled to summary judgment only when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Helm Financial Corp. v. MNVA Railroad, Inc.,* 212 F.3d 1076, 1080 (8th Cir.2000)(citing Fed. R.Civ.P. 56(c)); *accord Bailey v. USPS,* 208 F.3d 652, 654 (8th Cir.2000). An issue

of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394, 395 (8th Cir.1992)(citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A genuine issue of fact is material if it "might affect the outcome of the suit under governing law." *Hartnagel,* 953 F.2d at 395 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); *see Rouse v. Benson,* 193 F.3d 936, 939 (8th Cir.1999).

In assessing a motion for summary judgment a court must determine whether a fair-minded trier of fact could reasonably find for the nonmoving party based on the evidence presented. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Herring v. Canada Life Assurance Co.,* 207 F.3d 1026, 1030 (8th Cir.2000). The court must view the facts in the light most favorable to the nonmoving party, and give that party the benefit of all reasonable inferences which can be drawn from them. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; *accord Lambert v. City of Dumas,* 187 F.3d 931, 934 (8th Cir.1999); *Kopp v. Samaritan Health System, Inc.,* 13 F.3d 264, 269 (8th Cir. 1993).

## II.

The following facts are undisputed or as viewed in the light favorable to plaintiff.[2] On June 26, 2000 around 10:00 p.m. plaintiff Zachariah Arrington, an African–American juvenile, was with five friends in the vicinity of Vanderveer Park in Davenport, Iowa. As they walked through a yard the property owner became angry and swore at them, resulting in a disturbance which led a neighbor to call the police.

---

**1.** *See* note 6 *infra.*

**2.** Plaintiff admits all the facts stated in defendants' Statement of Undisputed Facts, except

for a complaint about completeness with respect to ¶ 9 thereof.

(Def.App. at 1). Except for Arrington and another who was part African–American, all in the group were white. (Def.App. at 6). Defendant Behning responded to the call with another officer. (*Id.* at 1). He stopped Arrington and his friends for questioning concerning the disturbance. (*Id.* at 4). Behning obtained the names of all the individuals in the group and called them in to the police dispatcher to check for outstanding warrants. Although none of the individuals matched any warrants, the dispatcher reminded Behning that plaintiff's last name was the same as that of a suspect in a bank robbery which had occurred that day in nearby Moline, Illinois. Officer Behning then asked the group which one of them was named Arrington. Zachariah stepped forward and identified himself. (*Id.* at 1, 2; Pltf.App. at 4).

At this point the versions diverge. Behning claims he asked Arrington to sit in the back seat of his squad car so he could ask some questions about the robbery. (Def.App. at 4). In his police report, Behning wrote he "lightly took hold of Arrington's right shirt sleeve" as he walked him to the squad car, whereupon he did a patdown for weapons, before placing him in the car. (Pltf.App. at 2). One of the individuals with Arrington, Jason DeVrieze, has provided an affidavit stating an officer (presumably Behning) "grabbed Zachariah by the back of his shirt and took him, by force, toward the unmarked car" where Arrington "was thrown up against the car and the officer kicked his feet apart and patted him down." (Pltf.App. at 4).

Once Arrington was in the car, Behning explained to him why he had been stopped and told him he had to wait until Behning received information concerning the suspect. (Pltf.App. at 3; Def.App. at 4–5). That information (received by radio or computer printout) excluded Arrington as

the suspect and Behning released him. (Pltf.App. at 3; Def.App. at 5). Arrington was detained for not more than 10 to 15 minutes. (Def.App. at 2).

Arrington was in "disbelief and shock" over the event and complained to his mother the next day of back pain. His mother observed bruises and a few scratches on Arrington's back. (Pltf.App. at 7). Arrington has not provided an affidavit.

### III.

Defendants' motion challenges the sufficiency of the evidence on plaintiff's municipal liability claims against the City, raises the defense of qualified immunity to the federal constitutional claims against Behning and seeks dismissal of the state law claims on legal and factual grounds. The Court will consider the federal constitutional claims first and then the state law claims.

### A. The Federal Claims

#### 1. *Qualified Immunity*

Behning raises the defense of qualified immunity. The Eighth Circuit has just recently again summarized the qualified immunity analysis:

... A state actor is entitled to qualified immunity when his " 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " [*Sexton v. Martin*, 210 F.3d 905, 909 (8th Cir.2000) ](quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). To determine whether qualified immunity is appropriate, we first ask whether the plaintiff alleges facts demonstrating that the state actor violated the plaintiff's constitutional or statutory rights. *See Hope v. Pelzer*, 536 U.S. 730, ——, 122 S.Ct. 2508, 2513, 153 L.Ed.2d 666 (2002); *Washington v. Normandy Fire Prot.*

*Dist.*, 272 F.3d 522, 526 (8th Cir.2001). In doing so at the summary judgment stage, we "take as true those facts asserted by [a] plaintiff that are properly supported in the record." *Tlamka v. Serrell*, 244 F.3d 628, 632 (8th Cir.2001). If those facts would establish a constitutional violation if proven at trial, our next inquiry is whether the right violated was clearly established at the time of the state actor's conduct. *Washington*, 272 F.3d at 526. The law is clearly established if the law was sufficiently developed to give the official "fair warning" that his alleged conduct violated the plaintiff's rights. *Hope*, 536 U.S. at ——, 122 S.Ct. at 2516.

*Shade v. City of Farmington*, 309 F.3d 1054, 1058–59 (8th Cir.2002). *See Kukla v. Hulm*, 310 F.3d 1046, 1048–49 (8th Cir. 2002).

## 2. *Equal Protection Claim*

■ Arrington's first claim is that Officer Behning's conduct in singling him out of the group, asking him to step to the patrol car, conducting a pat down, manhandling him and asking him questions was based on his race in violation of his rights under the Equal Protection Clause and the parallel Iowa constitutional provision.[3]

Arrington must prove that Behning's conduct was motivated by his race. *See Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 265, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977)("[p]roof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause"); *Ellebracht v. Police Bd. of Metropolitan Police Dep't of City of St. Louis*, 137 F.3d 563, 565 (8th Cir.1998)(impermissible purpose or motive required); *Batra v. Board of Regents*, 79 F.3d 717, 721 (8th Cir.1996)(plaintiff must establish "an unlawful intent to discriminate against plaintiff for an invalid reason").

The only evidence on the equal protection claim is that Behning forcibly detained Arrington, the only African–American, and not the other youths. The undisputed record is that Arrington was detained because he shared the same last name as a robbery suspect police had been alerted to. His detention for this reason is both against an invidious racial motive and demonstrates Arrington was not similarly situated to his friends. Plaintiff has not alleged any facts which would support a finding of a discriminatory motive in connection with Behning's complained-of conduct. Accordingly, the equal protection claim fails at the first step of the qualified immunity analysis and

---

**3.** Equal protection claims under the Iowa constitutional counterpart to the federal Equal Protection Clause are subject to the same analysis as applied to the federal constitution. *In re Morrow*, 616 N.W.2d 544, 547 (Iowa 2000). Similarly, the search and seizure clause of the Iowa constitution has been held by the Iowa Supreme Court to be "identical in scope, import and purpose" to the Fourth Amendment to the federal constitution. *State v. Cline*, 617 N.W.2d 277, 284–85 (Iowa 2000)(quoting in part *State v. Beckett*, 532 N.W.2d 751, 755 (Iowa 1995)). The Iowa Supreme Court has endeavored to interpret the state search and seizure clause consistently with the Fourth Amendment, parting com-

pany only with respect to the U.S. Supreme Court's good faith exception to the exclusionary rule which the Iowa Supreme Court has rejected as a state constitutional principle. *Cline*, 617 N.W.2d at 284–85. The exclusionary rule is not involved in this case. The parties have not separately analyzed the state constitutional issues as stand-alone claims. In view of the Iowa case authority just described, and the lack of any argument the Court should do otherwise, the Court has applied federal constitutional law to the Iowa constitutional equal protection and search and seizure claims. Accordingly, the discussion in the text addresses only the federal constitutional issues.

defendants are entitled to summary judgment thereon.

### 3. *Fourth Amendment Claims*

Plaintiff complains about the continuation of his detention as a potential robbery suspect,[4] the pat down search, and associated use of force.

#### a. *The Detention*

■ "The Fourth Amendment forbids searches and seizures that are unreasonable, and 'generally requires police to secure a warrant before conducting a search.'" *United States v. Roggeman*, 279 F.3d 573, 577 (8th Cir.), *cert. denied,* —— U.S. ——, 123 S.Ct. 79, 154 L.Ed.2d 134 (2002)(citing *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and quoting *Maryland v. Dyson*, 527 U.S. 465, 466, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999)). "Reasonableness" is the touchstone of the Fourth Amendment. It is judged by an objective standard. *Graham v. Connor*, 490 U.S. 386, 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397, 109 S.Ct. 1865.

In order to detain Arrington for questioning, Officer Behning needed only a reasonable suspicion that "criminal activity may be afoot." *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "[T]he level of suspicion required for a *Terry* stop is obviously less demanding than that for probable cause," and "is considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). An officer merely

needs "'some minimal level of objective justification' for making the stop." *Id.* (quoting *INS v. Delgado*, 466 U.S. 210, 217, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984)). In other words, the officer "must be able to articulate something more than an inchoate and unparticularized suspicion or hunch." *Id.* (internal quotation marks omitted). *Bates ex rel. Johns v. Chesterfield Co., Va.*, 216 F.3d 367, 371 (4th Cir.2000); *see Illinois v. Wardlow*, 528 U.S. 119, 123–24, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000); *Winters v. Adams*, 254 F.3d 758, 763 n. 1 (8th Cir.2001); *United States v. Fletcher*, 91 F.3d 48, 51 (8th Cir.1996), *cert. denied,* 520 U.S. 1121, 117 S.Ct. 1258, 137 L.Ed.2d 338 (1997). Reasonable suspicion determinations are made with reference to the totality of the circumstances and cannot be reduced to "a neat set of legal rules." *United States v. Arvizu*, 534 U.S. 266, 274, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002)(quoting *Ornelas v. United States*, 517 U.S. 690, 695–96, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). Where, as here, the factual background is not disputed, whether a reasonable police officer would have a reasonable suspicion is a mixed question of law and fact. *Ornelas*, 517 U.S. at 696–97, 116 S.Ct. 1657.

When Behning called in the names of the young people identified in connection with the reported disturbance the dispatcher reminded Behning that police in Moline (with Davenport, one of the "Quad Cities" which make up the local metropolitan area) were seeking a suspect named Arrington in connection with a bank robbery which had occurred earlier that day. (Pltf.App. at 2; Def.App. at 4). "Arrington" is not a common name in the area. (Def.App. at 5). Behning detained Arring-

---

4. The Court does not understand Arrington to complain of the initial stop in connection with the complaint of a disturbance, but of events

after he identified himself as the person named Arrington.

ton until he was able to get more information about the suspect, information which, within ten or fifteen minutes, excluded plaintiff. There is no evidence that Behning was aware of information which tended to exclude Arrington as the suspect until he inquired further.

Police officers may rely on information from other officers in making a *Terry* stop. *See United States v. Navarrete–Barron,* 192 F.3d 786, 790 (8th Cir.1999). Behning had been informed that a bank robbery had occurred in Moline that day and the suspect was named Arrington. Local police had been asked to be on the lookout. A serious crime had occurred and the perpetrator was at large. The question then is whether this information gave Behning a reasonable suspicion that Zachariah Arrington was the suspect. Zachariah had the same name as that of the suspect. Behning's statement in his affidavit that "Arrington" is a "relatively unusual" name in the area is not contradicted. (Def.App. at 5). The limited information Behning had was particularized and objective, more than a hunch. Though the question is a close one, the Court is inclined to believe as a matter of law on this record that Behning had the minimal justification necessary to continue the stop until he received further information about the suspect. *Wardlow,* 528 U.S. at 123, 120 S.Ct. 673.

■ Assuming, on the other hand, the facts alleged by plaintiff do demonstrate a Fourth Amendment violation, Behning has qualified immunity from suit for making the stop. The case law in this area is clear in principle but has not developed in a way which provides much notice to police officers of what is in or out of bounds except in the clear case. "Reasonable suspicion" has been described by the Supreme Court as a "somewhat abstract" concept, not "finely tuned," "elusive," and not subject to a "neat set of rules." *Arvizu,* 534 U.S. at 274, 122 S.Ct. 744 (citing cases). The analysis is highly fact-specific and context-driven, and recognizes officers often must act immediately. It is sometimes difficult for an officer to tell how legal doctrine applies to a factual situation and where that is the case a reasonable mistake entitles the officer to immunity from suit. *Saucier v. Katz,* 533 U.S. 194, 206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). That would be the case here. The clearly established law did not put Behning on notice that his conduct in continuing Arrington's detention to resolve the identity issue was unlawful. *See Hope v. Pelzer,* 536 U.S. ——, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666 (2002) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)); *Saucier,* 533 U.S. at 206, 121 S.Ct. 2151.

b. *The Pat–Down*

■ After making a stop, an officer may make a "limited, warrantless search for the protection of himself . . . if he has a reasonable, articulable suspicion that the person may be armed and presently dangerous." *Roggeman,* 279 F.3d at 577 (citing *Terry,* 392 U.S. at 30, 88 S.Ct. 1868). Whether a protective search is justified is determined by an objective standard and is a mixed question of law and fact: " '[an] officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.' " *Id.* at 577–78 (quoting *Terry,* 392 U.S. at 27, 88 S.Ct. 1868). "The level of suspicion necessary to constitute reasonable suspicion that will, in turn, justify a protective patdown search 'is considerably less than proof of wrongdoing by a preponderance of the evidence' and 'is obviously less demanding than that for probable cause.' " *Id.* at 578 (quoting *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)). Generally, the bal-

ance between the need for a search and the invasion of personal rights which accompanies it weighs against the constitutionality of the search only if the search is conducted "in an extraordinary manner, unusually harmful to an individual's privacy or even physical interests . . . ." *Whren v. United States,* 517 U.S. 806, 818, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

If Behning had a reasonable suspicion sufficient to justify a brief stop of Arrington as a potential robbery suspect, he would have had justification for a patdown search for weapons conducted in an appropriate, non-intrusive manner. Accordingly, the inquiry here tracks that with respect to justification for the stop. For the same reasons just discussed in part III(A)(3)(a), the Court concludes Behning had adequate justification, and has qualified immunity from suit, for conducting the patdown search.

### c. *The Use of Force*

█ The use of force in the context of an arrest or investigatory stop implicates the Fourth Amendment right to be secure against unreasonable seizures. *Graham,* 490 U.S. at 394, 109 S.Ct. 1865. "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396, 109 S.Ct. 1865 (citing *Terry,* 392 U.S. at 22–27, 88 S.Ct. 1868). Any force must be "objectively reasonable in light of the facts and circumstances" confronting the officer. *Wilson v. City of Des Moines,* 293 F.3d 447, 451 (8th Cir.2002) (quoting *Graham,* 490 U.S. at 397, 109 S.Ct. 1865). " 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' . . . violates the Fourth Amend-

ment." *Graham,* 490 U.S. at 396, 109 S.Ct. 1865 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)). But even a push or shove is subject to the Fourth Amendment reasonableness standard. *Saucier,* 533 U.S. at 209, 121 S.Ct. 2151.

For purposes of the summary judgment motion the Court must take as true the affidavit of one of Arrington's friends present at the scene, Jason DeVrieze, stating that after Arrington identified himself the officer (Behning) grabbed Arrington by the back of his shirt, forcibly took him to the car, threw him up against the car, and kicked his feet apart to make a patdown search. (Pltf.App. at 4). In her affidavit Arrington's mother, Rose Arrington, states that the day after the incident Arrington complained of back pain and, when she took a look at her son, she noticed bruises and a few scratches in the middle part of his upper back.[5] Both DeVrieze and Mrs. Arrington described Zachariah as being in shock and, in Mrs. Arrington's words, "disbelief" about the incident. The affidavits of Mrs. Arrington and DeVrieze are not very probative. That Arrington was "thrown" against the car does not specifically describe the degree of force. Mrs. Arrington does not directly tie her observations of the bruises and scratches on her son's back to the incident. Arrington himself has not provided an affidavit. However, viewing the affidavits favorably to Arrington, and giving him the benefit of reasonable inferences flowing from them, they are minimally sufficient to generate an issue of fact about the degree of force used and resulting actual injury.

█ Defendants argue Arrington has not shown he was injured to the extent

---

5. Mrs. Arrington also relays her son's description of the incident, including the allegation that he was "slammed" against the squad car. She also states that she verified her son's version of events with other boys who were present. In this regard Mrs. Arrington's affidavit is hearsay and the Court has not considered it.

required to prevail on an excessive force claim. The Eighth Circuit has rejected any requirement that an excessive force plaintiff show "significant injury." *Dawkins v. Graham*, 50 F.3d 532, 535 (8th Cir.1995). It has assumed, though, that such a plaintiff must show an "actual injury." *Lambert v. City of Dumas*, 187 F.3d 931, 936 (8th Cir.1999); *see Hunter v. Namanny*, 219 F.3d 825, 831 (8th Cir.2000). Also, the force used must be more than *de minimis*. *Namanny*, 219 F.3d at 832. Throwing a *Terry* stop detainee against a police car is not a *de minimis* use of force. Alleged back pain, bruises, scratches and emotional trauma are sufficient to satisfy any actual injury requirement. *See Lambert*, 187 F.3d at 936.

█ Defendants do not offer any justification for throwing Arrington up against the police car, or, indeed, for using any force. They deny the claimed use of force occurred. In his police report Behning described Arrington as "very cooperative" and admits to doing no more than "lightly [taking] hold of Arrington's right shirt sleeve" to guide him to the car. (Pltf.App. at 2–3). The use of force like that described where there is no need is an unreasonable seizure. Thus plaintiff has alleged facts which if true establish a violation of Arrington's Fourth Amendment rights. The objective reasonableness standard articulated in *Graham* was clearly established when Behning acted. *Saucier*, 533 U.S. at 201–02, 121 S.Ct. 2151. Accordingly, Arrington had a clearly established right to be free from excessive force. *Kukla*, 310 F.3d at 1050. The contours of the right are also clear with respect to the facts alleged. A reasonable police officer would know that use of force unjustified by any need would be unlawful. The clearly established law gave Behning fair warning

that the use of force without reason violated Arrington's rights. Of course, whether Behning used the force alleged, as well as its injurious effect, are disputed. Where there is "a genuine dispute concerning predicate facts material to the qualified immunity issue," there can be no summary judgment. *Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir.2000) (quoting *Lambert*, 187 F.3d at 935).

### 4. Due Process Claim

It is not clear from the complaint or plaintiff's brief what the claimed Due Process violation is.[6] The Court assumes this claim is based on the allegation of unnecessary force in connection with Arrington's detention and patdown search. As the Supreme Court made clear in *Graham*, the use of force in connection with an investigatory stop presents an unreasonable seizure issue under the Fourth Amendment, not a substantive due process issue under the Due Process Clause. *Graham*, 490 U.S. at 392, 396–97, 109 S.Ct. 1865. As plaintiff puts forward no facts which would support a due process claim, defendants' motion for summary judgment will be granted on this count.

### 5. Municipal Liability

Plaintiff's federal claims against the City are based on alleged municipal customs and practices, failure to train, or to supervise. *See Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Monell v. Dep't of Soc. Services of the City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Williams v. Davis*, 200 F.3d 538, 539 (8th Cir.2000);

---

**6.** Plaintiff's due process claim is appropriately considered with reference to the Due Process Clause in the Fourteenth Amendment to the U.S. Constitution rather than its Fifth Amendment counterpart pleaded in the complaint.

*Anderson v. Franklin Co., Mo.*, 192 F.3d 1125, 1131 (8th Cir.1999). Plaintiff identifies no evidence in the summary judgment record which could support a finding of municipal liability against the City for Behning's alleged use of excessive force under the relevant case law.[7] Therefore, the City of Davenport (and the police department) are entitled to summary judgment on the federal claims.

Plaintiff makes non-specific complaints about defendants' failure to answer interrogatories and produce documents in response to discovery requests. The Court has previously granted, in part, a motion to compel brought by plaintiff to obtain certain records concerning Behning's employment history. (September 18, 2002 Ruling and October 24, 2002 Order). No issue has been raised about defendants' compliance with the Court's order compelling discovery, and it is now past time under the local rules for new motions to compel. LR 37.1(c). In plaintiff's brief, there is a reference to Fed.R.Civ.P. 56(f), however, plaintiff has not made the required showing by affidavit of inability to oppose the motion for summary judgment in this regard.

The motion for summary judgment will be granted with respect to the § 1983 claims against the defendants City and police department.

### B. State Law Claims

1. *Assault and Battery/Excessive Force Hate Crime*

Plaintiff's Fourth Claim for Relief is a civil action for violation of Iowa's hate crime statutes. Specifically, plaintiff alleges Behning committed an assault and battery and used excessive force in violation of Iowa Code §§ 708.2C and 729A.2.

■ Iowa Code § 729A.5 provides civil remedies for victims of hate crimes, including actions for damages. "Hate crime" is defined in pertinent part as "one of the following public offenses when committed against a person ... because of a person's race ... assault in violation of individual rights under section 708.2C." *Id.* § 729A.2(1). Section 708.2C(1) refers back to the definition of "hate crime" with the net result that an assault motivated by race is the cause of action. Plaintiff must therefore establish not only the elements of assault and battery under Iowa law but also that Behning's assault was *because of* Arrington's race. *Id.* As discussed in connection with plaintiff's equal protection claim, there is no evidence in the summary judgment record to support a finding of racial motivation on Behning's part. Summary judgment will be granted with respect to this state law claim.

2. *False Arrest*

■ Plaintiff's Fifth Claim for Relief alleges Behning's actions constituted false arrest. To establish this claim, plaintiff must show "detention or restraint against [a] person's will and unlawfulness of [the] detention." *Rife v. D.T. Corner, Inc.*, 641 N.W.2d 761, 767 (Iowa 2002) (citing *Kraft v. City of Bettendorf*, 359 N.W.2d 466, 469 (Iowa 1984)); *Zohn v. Menard, Inc.*, 598 N.W.2d 323, 325 (Iowa App.1999) (quoting *Valadez v. City of Des Moines*, 324 N.W.2d 475, 477 (Iowa 1982), quoting in turn *Sergeant v. Watson Bros. Transportation Co.*, 244 Iowa 185, 196, 52 N.W.2d 86, 92 (1952)). As discussed with respect to the detention component of plaintiff's Fourth Amendment claim, Officer Behning's brief detention of Arrington was lawful. Sum-

---

**7.** With respect to the constitutional claims on which Behning is entitled to summary judgment the City is likewise entitled to summary judgment. *See Turpin v. County of Rock*, 262 F.3d 779, 784 (8th Cir.2001)(citing *Abbott. v. City of Crocker*, 30 F.3d 994, 998 (8th Cir. 1994)).

mary judgment will be granted as to this claim.

As Behning is entitled to summary judgment on the state law claims, so too is the City under any theory of respondeat superior.

### IV.

Defendants have demonstrated there are no genuine issues of material fact and they are entitled to judgment as a matter of law with respect to all claims against Behning except that part of plaintiff's Fourth Amendment claim based on the excessive use of force in connection with the investigatory stop. The defendant City (and its police department) are entitled to summary judgment on all claims. This matter will come on for final pretrial conference on January 31, 2003 and for trial on February 24, 2003 as previously scheduled.

Defendants' motion for summary judgment granted in part and denied in part as above.

IT IS SO ORDERED.