# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3487

_____

| | | |
|---|---|---|
| David Kenyon, | * | |
| | * | |
| Plaintiff/Appellee, | * | |
| | * | |
| v. | * | |
| | * | Appeal from the United States |
| Clayton Edwards, individually, | * | District Court for the Eastern |
| | * | District of Arkansas. |
| Defendant/Appellant, | * | |
| | * | |
| Lt. Jim Hale, individually; Jeremiah | * | |
| Ervin, individually; Dan Jarry, | * | |
| individually, originally sued as | * | |
| "Van Jarry," | * | |
| | * | |
| Defendants. | * | |
| | * | |

_____

Submitted: April 11, 2006
Filed: September 7, 2006

_____

Before RILEY, BEAM, and SMITH, Circuit Judges.

_____

BEAM, Circuit Judge.

Clayton Edwards, a deputy sheriff for White County, Arkansas, brings this interlocutory appeal of the district court's denial of his motion for summary judgment based on qualified immunity. David Kenyon (Kenyon) sued Edwards and three White

County deputy sheriffs: Lieutenant Jim Hale, Sheriff Jeremiah Ervin, and Sheriff Dan Jarry.

## I. BACKGROUND

We recount the facts in the light most favorable to Kenyon, the party asserting the injury in this qualified immunity case. Saucier v. Katz, 533 U.S. 194, 201 (2001). On September 13, 2003, Edwards responded to a report of an altercation at a demolition derby being held at the White County fairgrounds in Searcy, Arkansas. Edwards arrived to see an irritated Stephen Kenyon being restrained by a member of a large crowd that had gathered near the derby pits. Edwards noticed that Stephen looked as though he had been in a fight. Edwards asked what was going on, and Stephen replied, "He hit my mother." Edwards could tell Stephen was indicating that his mother was Shirley Cox, and so Edwards went over to her. Edwards described Cox's nose as being flat against her face, and that she was bleeding profusely from her nostrils. He noted that he was among a crowd of between one-hundred and two-hundred people, and described the environment as an "atmosphere of hostility" where weapons of opportunity, such as crowbars and hammers, were readily available. At first, Cox did not respond to Edwards' questions about what had happened because she was in pain. Edwards told Cox that an ambulance was on the way. Eventually, Cox told Edwards that it was David Kenyon who had hit her. Edwards learned that David Kenyon was Cox's ex-husband, and realized he had a domestic battery situation on his hands.

Edwards addressed the crowd around him and asked if there were any witnesses to the events. He also asked where David Kenyon was. No one answered at first, but then someone called out, "There he is." The crowd parted, leaving Kenyon in the middle. Edwards and the other officers on the scene approached Kenyon, and Edwards put his hand on Kenyon's elbow and asked his name. When Kenyon

answered, Edwards told him he was under arrest.[1]  Kenyon raised his arms in an inquiring gesture and asked, "For what?"  Edwards then grabbed Kenyon's wrist and took his arm behind his back.  Though precisely what happened next is in dispute, we must, as we have said, credit Kenyon's version of the facts for purposes of the qualified immunity analysis.  Under that version, Edwards threw Kenyon onto the hood of a nearby car and pulled Kenyon's arms up high behind his back in order to handcuff him.  Kenyon told Edwards that he was hurting his arms, but Edwards persisted until Kenyon was handcuffed.  Kenyon resisted because his arms were in pain from the handcuffing, and the officers told Kenyon to stop resisting.  Kenyon claims he suffered a torn rotator cuff, requiring surgery, and continues to have pain.

Kenyon's suit against the four police officers ended with a jury finding in favor of the officers, save Edwards.  The jury was unable to reach a verdict on the excessive force claim against Edwards, and the court declared a mistrial.  After the court scheduled a new trial, Edwards moved for summary judgment based in part on qualified immunity.  The district court accepted Kenyon's version of the facts as true for purposes of qualified immunity, and found that on those facts, Edwards' actions violated Kenyon's constitutional rights.  But the court said it was impossible at the summary judgment stage to answer whether it would be clear to a reasonable officer that Edwards' conduct was unlawful in the situation he faced–that is, whether the constitutional right at issue was clearly established–because it found that a material question of fact remained.  The court did not explain at that point what fact remained in dispute, but elsewhere in its opinion, the court stated a material question of fact remained as to whether the force Edwards used was objectively reasonable under the circumstances.

---

[1]The record indicates that Kenyon admitted that Edwards had probable cause to arrest Kenyon for both domestic battery and public intoxication.

## II.    DISCUSSION

A district court's order denying summary judgment is generally not appealable. Henderson v. Munn, 439 F.3d 497, 501 (8th Cir. 2006). However, this court has limited authority to review the denial of summary judgment based on qualified immunity to the extent the appellant seeks review of purely legal determinations. Id. Edwards does not seek review of any factual determinations, but argues, in essence, that Kenyon has failed to show that Edwards used excessive force in his arrest, and that even if Edwards did, Kenyon's right to be free from such force under these circumstances was not clearly established. We find that Edwards is entitled to summary judgment based on qualified immunity.

### A.    The Qualified Immunity Analysis

Saucier provides the marching orders for courts considering qualified immunity claims. Under Saucier, courts presented with a motion for summary judgment on the basis of qualified immunity undertake a two-step inquiry. The threshold question asks "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" 533 U.S. at 201. If, on the facts as alleged, no constitutional violation could be shown were the allegations established, the inquiry ends, and the defendant is entitled to qualified immunity. "On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." Id. The second question must be asked in a "particularized" sense: "'[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Id. at 202 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). That is, the essential question at step two is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id.

**B.     No Constitutional Violation**

Edwards first argues that because Kenyon has failed to point to the violation of an "objective law enforcement standard" during the arrest, Kenyon has failed to show that reasonable officers would disagree on the proper course of action in the situation. Thus, Edwards says, there is nothing for a jury to decide. This somewhat convoluted argument challenges the district court's finding that the facts as alleged by Kenyon show that Edwards used excessive force during the arrest, violating Kenyon's Fourth Amendment right to be free from unreasonable seizure.

Excessive force claims are analyzed under the Fourth Amendment's reasonableness standard. Graham v. Connor, 490 U.S. 386, 394 (1989). In determining whether the amount of force used is reasonable, courts must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. at 396 (internal quotations and citation omitted). This analysis requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. Finally, judges must allow for the fact that police officers often make split-second decisions about the amount of force necessary in tense, uncertain, and rapidly changing circumstances. Id. at 396-97.

Taking the facts as alleged by and in the light most favorable to Kenyon, Edwards threw Kenyon onto the hood of a car and pulled his arms up high behind his back in an "unnatural" manner in an attempt to arrest and handcuff Kenyon for domestic battery and public intoxication. Kenyon kept asking why he was being arrested, as he continued to resist, albeit because of the pain from the handcuffing.

The encounter took place amidst a large crowd of people in an atmosphere of hostility where weapons of opportunity were available. Based on all of the factors in Graham, Edwards did not use excessive force. Though the encounter apparently resulted in injury to Kenyon's rotator cuff, we believe under the circumstances that Edwards' use of force was reasonable in order to bring a potentially volatile situation under control.

## C.    Right Not Clearly Established

Even if it could be said, on the facts as alleged, that Edwards' use of force was unreasonable, and thus unlawful, it would not necessarily have been clear to a reasonable officer that the amount of force used was problematic. That is, it could not be said that the right to be free from the kind of force Edwards used in the situation was clearly established. Because an outstanding issue of material fact remained as to whether Edwards used excessive force, the district court did not analyze whether a reasonable officer would know that the force used was unlawful. But in Saucier, the Supreme Court rejected this approach. The Court reversed the Ninth Circuit, which had upheld the district court's denial of summary judgment based on qualified immunity because an issue of material fact remained on the excessive force claim. The Ninth Circuit viewed the question of whether an officer was reasonable in believing his actions were lawful in light of clearly established law, and the question of reasonableness on the merits of the Fourth Amendment claim, as the same inquiry. However, the Supreme Court made clear the importance of proceeding in order through both steps–determining whether the facts alleged showed a constitutional violation, and then whether a reasonable officer would believe his actions were unlawful in light of clearly established law. This, the Court noted, allows for the elaboration of and advancement toward an understanding of the law from case to case. Saucier, 533 U.S. at 201. The Court said:

> [t]he approach the Court of Appeals adopted–to deny summary judgment
> any time a material issue of fact remains on the excessive force

claim–could undermine the goal of qualified immunity to avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment. If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.

Id. at 202 (internal quotation and citations omitted).

Thus, on the facts alleged by Kenyon, we do not believe the state of the law at the time of this incident was such that it would be clear to a reasonable officer that Edwards' conduct was unlawful in the situation he confronted at the derby. Kuha v. City of Minnetonka, 365 F.3d 590, 601-02 (8th Cir. 2003). Though it is clearly established that the Fourth Amendment bars the use of excessive force generally, we must keep in mind that the right must be clearly established "in a more particularized . . . sense" such that the "contours of the right" make it clear to officers what the law is in a given circumstance. Saucier, 533 U.S. at 202 (internal quotations omitted).

Kenyon points principally to Goff v. Bise, 173 F.3d 1068 (8th Cir. 1999), Kopec v. Tate, 361 F.3d 772 (3d Cir.), cert. denied, 543 U.S. 956 (2004), and Kostrzewa v. City of Troy, 247 F.3d 633 (6th Cir. 2001), to argue that the right to be free from the force Edwards used in the situation he faced was clearly established. But these cases do not present facts akin to those faced by Edwards in his confrontation with Kenyon. In Goff, we affirmed the denial of qualified immunity where a police officer and town mayor arrested the plaintiff, tightly cuffed him, threw him to the ground, and choked him to unconsciousness in a situation where personal animosity may have motivated the arrest and where the plaintiff did not pose a threat. In Kopec, a police officer handcuffed the plaintiff so tightly that he began to faint and writhed in pain on the ground for about ten minutes after the plaintiff refused to provide the officer personal information, following the officer's demand that the plaintiff and his girlfriend desist their frolicking trespass onto a frozen pond. The court in Kopec held that the officer's failure to respond promptly to the plaintiff's

painful pleas in what were "rather benign circumstances" where the officer did not face a "dangerous situation" constituted excessive force. 361 F.3d at 777. In Kostrzewa, the court denied qualified immunity where the plaintiff was stopped for a routine traffic violation, tightly handcuffed, and then battered about the back of a squad car by the intentionally reckless driving of the arresting officers. In Kukla v. Hulm, 310 F.3d 1046 (8th Cir. 2002), the court upheld the denial of qualified immunity where officers arrested plaintiff for refusing to sign a ticket for failure to produce a trucker log book, and in the process forced him against his truck, twisted his arm high behind his back injuring his collar bone, and broke his wrist with the handcuffs. The court found that the minor infraction and lack of a safety threat merited denial of immunity. In none of these cases did the officers face the charged and potentially dangerous atmosphere that Edwards faced in arresting Kenyon, where physical violence had already occurred and a large crowd with access to weapons of opportunity stood nearby.

Based on the state of the law and given the facts as alleged by Kenyon, we do not find that a reasonable officer would have believed that the force Edwards used was unlawful.

## III.   CONCLUSION

Because, given the facts as alleged by Kenyon, we believe no constitutional violation occurred and, alternatively, that a reasonable officer would not believe the force used here to be excessive, we find that Edwards is entitled to qualified immunity. We therefore reverse and remand.

SMITH, Circuit Judge, dissenting.

I respectfully dissent. When reviewing a grant or denial of qualified immunity, we recite the facts and view the evidence in the light most favorable to plaintiff

Kenyon, accepting his account of the facts as true where there are material inconsistencies. *E.g.*, *Guite v. Wright*, 147 F.3d 747, 749 (8th Cir. 1998). The majority opinion, however, gives too little deference to Kenyon's version of the facts. The facts alleged by Kenyon, if true, establish that Edwards violated a clearly established constitutional right to be free from excessive force.

Kenyon alleged that as he was being handcuffed—in what several witnesses testified was an unnatural motion—he yelled that Edwards was badly hurting his arm. Edwards replied, "If you don't shut your mouth, I'm gonna break the thing off." Several witnesses at trial, including Kenyon, also testified that Kenyon did not resist arrest and that he only told the deputies that they were hurting his arm. Virginia Noah, Judith Rhodes, and Karen Cummins testified that Kenyon's head was banged repeatedly against the car during the handcuffing. Assuming, as we must, that Kenyon did not resist, Edwards's conduct potentially classifies as gratuitous and excessive force.

The majority adopts Edward's characterization of the crowd, viewing it as hostile and with easy access to weapons, and also ignores the fact that four armed policemen were present during the handcuffing. The threat posed by the crowd, if any, to Edwards is a fact that should be resolved by the jury. The threat posed by Kenyon, if any, was minor, according to his account and that of several witnesses at trial. Although Kenyon was arrested on two misdemeanor charges, he was acquitted of one and the other was dismissed.[2]

Finally, the majority makes no mention of the testimony favorable to Kenyon's claim that Edwards used an unorthodox method of handcuffing that was not officially sanctioned. Officer Folk, who received training from the same employer as Edwards,

_____

[2]A jury *acquitted* Kenyon on the third-degree battery charge, and the public intoxication charge was dismissed. The majority makes no mention of any of this. Instead, the majority implies Kenyon's guilt on the charges.

testified that when properly handcuffing an arrestee, one should bring the arm and hand down by the arrestee's side and then around to the back. Edwards contends that Officer Folk's testimony supports the notion that the technique of bringing a suspect's raised arm behind his back represents a law enforcement technique that is taught in training classes, pointing to Officer Folk's statement that "[w]ell, it depends on which training class you take" after he was asked if the raised-arm technique was proper. However, Edwards's argument takes Officer Folk's statements out of context. Folk went on to state that he had been shown the raised-arm technique informally by an ex-Marine in 1969. He further stated that "I never did hear nothing about using that style but he [the ex-Marine] wasn't certified back then" and that his training updates have continued to teach the method of bringing the arm behind the back after it has been lowered. Viewing the evidence in the light most favorable to Kenyon, it appears that Officer Folk considered the raised-arm technique unorthodox and not officially sanctioned.

These questions—whether Kenyon was resisting; whether Edwards made comments indicating an intent to cause gratuitous injury; whether the four deputies actually had control over the crowd; and whether the handcuffing technique was unorthodox—constitute material, disputed issues of material fact that should not be tried by this court on appeal.

I also disagree with the majority on the qualified immunity analysis. "We analyze excessive force claims occurring in the context of seizures under the Fourth Amendment, using its reasonableness standard." *Henderson v. Munn*, 439 F.3d 497, 502 (8th Cir. 2006). "To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances." *Id.* (quoting *Littrell v. Franklin*, 388 F.3d 578, 583 (8th Cir.2004) (quoting *Greiner v. City of Champlin*, 27 F.3d 1346, 1354 (8th Cir.1994))) (internal quotations omitted). "Circumstances such as the severity of the crime, whether the suspect posed a threat

to the safety of the officers or others, and whether the suspect was resisting arrest are all relevant to the reasonableness of the officer's conduct." *Id.* (quoting *Foster v. Metro. Airports Comm'n*, 914 F.2d 1076, 1081 (8th Cir.1990) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989))). At this procedural juncture, we must decide whether Kenyon "presented sufficient proof in support of his claim, if believed, to allow a reasonable jury to find the degree of force used against him was not 'objectively reasonable.'" *Id.* On this record, Kenyon satisfies this standard.[3]

---

[3]Kenyon presented sufficient proof to allow a jury to reasonably conclude that the force used against him was objectively unreasonable: First, Officer Folk testified that the proper manner of handcuffing someone was to bring the arm and hand down by their side and then around to the back. Officer Folk also indicated that the raised-arm technique is unorthodox. Second, Kenyon presented the testimony of several witnesses to his arrest, all of whom testified that Kenyon was not resisting arrest other than to the extent that he sought to avoid sustaining injury to his arm from Edwards's technique. Third, Kenyon was being arrested for misdemeanors. Fourth, at the time that Edwards allegedly used excessive force, Kenyon was immobilized. Deputies Edwards and Hale held Kenyon by the arms with his face down on a car, and Edwards proceeded to handcuff Kenyon. Edwards testified that he had control of Kenyon even before Hale arrived. (App. 62). Again, several witnesses testified that Kenyon was not resisting arrest. Fifth, Kenyon's alleged injury, a torn rotator cuff that required surgery, tends to establish that excessive force may have been used by Edwards. *Cf. Wertish v. Krueger*, 433 F.3d 1062, 1067 (8th Cir. 2006) ("[B]ecause some force was reasonably required to arrest and handcuff [the plaintiff], his relatively minor scrapes and bruises and the less-than-permanent aggravation of a prior shoulder condition were *de minimis* injuries that support the conclusion that [the officer] did not use excessive force.").

Edwards's torquing of Kenyon's arm "may have been a 'gratuitous and completely unnecessary act of violence,'" in violation of Kenyon's Fourth Amendment rights. *Henderson*, 439 F.3d at 503 (quoting *Fontana v. Haskin*, 262 F.3d 871, 880 (9th Cir. 2001)) (brackets omitted). Accepting these facts as true, which we must at this procedural posture, Kenyon presented sufficient proof in support of his claim to allow a jury to conclude reasonably that the degree of force used was not objectively reasonable under the Fourth Amendment.

-11-

"The right to be free from excessive force is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures of the person." *Guite*, 147 F.3d at 750 (citing *Graham*, 490 U.S. 386); *accord Henderson*, 439 F.3d at 503. The right "must be defined at the appropriate level of specificity before a court can determine whether it was clearly established." *Craighead v. Lee*, 399 F.3d 954, 961 (8th Cir.), cert. denied, 126 S. Ct. 472 (2005) (citing *Saucier v. Katz*, 533 U.S. 194, 202 (2001); *Brosseau v. Haugen*, 543 U.S. 194, 199–200 (2004) (per curiam)). "Although earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding." *Id*. (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)) (internal quotations omitted). Instead, the issue is whether prior cases would have put a reasonable officer on notice that the degree of force used would violate the plaintiff's right not to be subjected to excessive force. *Craighead*, 399 F.3d at 962–63.

The relevant case law supports the conclusion that the right to be free from excessive force in handcuffing was clearly established when Edwards arrested Kenyon—in this circuit and in other circuits. *Goff v. Bise*, 173 F.3d 1068, 1073 (8th Cir. 1999); *accord Kopec v. Tate*, 361 F.3d 772, 777 (3d Cir. 2004); *Kostrzewa v. City of Troy*, 247 F.3d 633, 641 (6th Cir. 2001); *see Henderson*, 439 F.3d at 503; *Guite*, 147 F.3d at 750.

*Goff* bolsters the denial of qualified immunity in the case at bar. In *Goff*, the plaintiff was tightly cuffed and choked, receiving a less substantial injury than Kenyon's torn rotator cuff. Moreover, although personal animosity was present in *Goff*, Edwards's comments during his arrest of Kenyon could indicate an intent to cause gratuitous injury. Whether an officer's desire to inflict unnecessary pain is motivated by personal animosity, as in *Goff*, or by some other inappropriate intent is immaterial. Furthermore, Edwards testified that he had control of Kenyon even before the other three deputies arrived. Considering that four deputies were present and that Kenyon was not resisting, it is unclear how Kenyon posed any more of a threat than

did the plaintiff in *Goff*—both men were subdued before the unnecessary force was used against them. In sum, *Goff* supports Kenyon's contention that the right to be free from excessive force in handcuffing was clearly established.

Other circuits have held that the right to be free from excessive force in handcuffing is clearly established. *E.g., Kopec*, 361 F.3d at 777–78 (holding that officer used excessive force by placing excessively tight handcuffs on the plaintiff and refusing to loosen them for ten minutes); *Kostrzewa*, 247 F.3d at 641 (holding that allegation of excessively tight handcuffing establishes constitutional violation). In *Kostrzewa*, the Sixth Circuit stated, "This circuit has held that the right to be free from excessive force, including 'excessively forceful handcuffing,' is a clearly established right for purposes of the qualified immunity analysis." 247 F.3d at 641 (citations omitted). Given this language, *Kostrzewa* turned upon the tight handcuffing of the plaintiff independently and without regard to the officers' intentionally reckless driving, as the majority indicates.

For the foregoing reasons, I respectfully dissent.

_____